Linda Vlasek JORDAN et vir, Appellants,

v.

James E. WALKER, Appellee.

No. 291.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Dec. 3, 1969.

Rehearing Denied Jan. 7, 1970.

838

John P. Mustachio, Alice Giessel, Talbert, Giessel, Barnett & Stone, Houston, for appellants.

D. L. McClure, McClure & Sharpe, Houston, for appellee.

TUNKS, Chief Justice.

This is a rear-end collision case. After both parties had rested the trial court found the defendant, Mrs. Jordan, liable as a matter of law and submitted to the jury only the issue as to the amount of plaintiff's damages. In response to that issue the jury found the damages to be $9,000. The defendants have appealed.

The collision upon which this suit is based occurred on April 25, 1966. At the date of the collision the plaintiff was a fireman with the Fire Department of the City of Houston. On October 19, 1966, he was suspended by action of the Civil Service Commission because he had been indicted for a felony. (Such charge was subse-

quently dismissed). This suspension remained in effect until it was lifted on November 19, 1968. On that date he was reinstated with full back pay.

Before the trial began the plaintiff filed a motion in limine asking that the defendant be instructed not to develop, before the jury, the facts relating to the plaintiff's suspension. The plaintiff's petition did not allege that he had sustained a loss of earnings in the past, but alleged a loss of earning capacity, both past and future. The damage issue submitted to the jury listed, among the elements of damage that might be considered, not a loss of earnings, but past and future loss of earning capacity.

The record does not reflect that the trial judge made any formal ruling on plaintiff's motion in limine. He did, however, before the start of the presentation of evidence, orally make a statement to the jury in the following language:

"Ladies and gentlemen: Before the testimony begins, there is one other instruction which I am going to give you. At the time of this accident, on April 25, 1966, the plaintiff, James E. Walker, as you all have been advised, was employed by the Houston Fire Department.

"During the period October 19, 1966— that is the October following the accident, October 19, 1966, until November 21, 1968, because of some Civil Service regulation, the plaintiff was laid off from his employment as a fireman with the Houston Fire Department.

"I don't know the details of this Civil Service regulation, and it doesn't concern me, nor should it concern you, because in no way can any regulation or ruling of a Civil Service body affect or determine the outcome of any case in this court.

"I tell you this only so that you may know that the plaintiff was not employed by the Houston Fire Department during that period of approximately two years between October 19, 1966, and November

21, 1968, because of that Civil Service regulation.

"Now, understand this: The plaintiff makes no claim that this two-year layoff was in any way connected with the accident made the basis of this suit or that the layoff from the fire department was a result of any physical disability to work. However, the plaintiff does claim and does expect to prove that during this two-year period he had a loss of earning capacity due to the accident of April 25, 1966, and because of such loss of earning capacity he was prevented from obtaining, retaining or securing other employment, and thereby had a loss of wage earning capacity.

"Now, understand that these are contentions made by the plaintiff and denied by the defendant.

"Now, do you understand what I have just told you?"

Both parties, out of the presence of the jury, objected to the judge's statement and made motions for mistrial. The objections were overruled and the motions for mistrial denied. The bases for the defendants' objection and motion were stated as follows:

"The defendants do now at this time object and except to the instruction which has been given to the jury because it assumes facts which are not in evidence in this case. It is a gross comment upon the evidence in this case and the evidence that is to be presented in the case. It is not consistent with the pleadings in this case, but instructs the jury that the plaintiff is making claims above and beyond those which are asserted in paragraph IV of the plaintiff's first amended petition.

"The defendants and each of them would object to this instruction because, if allowed to stand, it deprives the defendants of the right to have the facts in this case, which are disputed facts, as to the extent of injury, the cause of any loss of

earning capacity, to be decided by the jury.

"The defendants and each of them would object further to the instruction as given because even as given it fails to inform and instruct the jury that the suspension from duty in this case was in no way connected with the accident made the basis of this suit, leaving the jury to the impression or to speculate that there may have been some connection between the accident and the suspension, and this is especially true in view of the plaintiff's objection or that portion of the plaintiff's objection to this charge which has just been stated that they are in fact claiming that the layoff or suspension from duty, which is the true fact of what happened, was related to the accident made the basis of this suit."

The making of the statement by the trial judge and the overruling of the defendants' objection and motion for mistrial were not error. The plaintiff was seeking to recover not lost earnings but for loss of earning capacity. Under the facts of this case such was a proper element of damages. Dallas Ry. & Terminal Co. v. Guthrie, 146 Tex. 585, 210 S.W.2d 550; McCormack, on Damages, Sec. 87, p. 309. The judge had been informed of the plaintiff's suspension and reason for it. It was inevitable that the evidence would show that from October 19, 1966 to November 19, 1968, the plaintiff had not worked for the City of Houston as a fireman. But for some instruction on the part of the trial judge, the jury would have considered that fact as being evidentiary of the plaintiff's claim for damages. In the absence of some explanation such evidence would have prejudiced the defendant. On the other hand evidence as to the factual reason for his suspension would have been improper and prejudicial to the plaintiff.

The trial judge must avoid comments that are calculated to influence the jury in weighing the evidence properly admitted. It is proper, however, that he give the jury instructions that prevent the drawing of improper inferences from evidence properly admitted. Texas Mexican Ry. Co. v. Bunn, Tex.Civ.App., 264 S.W.2d 518, writ ref., n.r.e.; Sands v. Cooke, Tex.Civ.App., 368 S.W.2d 111, no writ hist.

After his injury the plaintiff was hospitalized for 12 days. At the time of the trial in January, 1969, he was still receiving medical care. His hospital and doctor bills up to the time of the trial exceeded $2,600. He was still limited to light duty and since returning to the Fire Department on December 3, 1968, he had served as a PBX operator. His work record between the date of his injury and his return to the Fire Department was irregular and his earnings low. There was substantial evidence of physical and mental pain as a result of his injuries. The jury's finding of $9,000 as the amount of his damages was, under the record, a conservative finding. If there was error in the trial court's complained of instruction it does not appear that it influenced the jury's verdict and it was harmless error. Rule 434, Texas Rules of Civil Procedure.

At the conclusion of the evidence the defendants requested the submission of an unavoidable accident issue and, conditional upon the refusal of that issue, requested submission of issues pertaining to the defense of sudden emergency. The trial court refused those issues, found liability as a matter of law and submitted only the damage issue. One of the appellants' points of error relates to such action on the part of the trial court.

The collision in question occurred at about 5:30 p.m. on April 25, 1966. It was daylight. It was misting rain and the streets were wet. The collision occurred on Bingle Road which runs north and south. The street was asphalt paved and was in good condition. There was nothing of an unusual nature to make the street slicker than it normally would be when it was wet. It was a two-lane street with two-way traffic and a center line. In the

area there were some dwellings and some business establishments.

The plaintiff was a passenger in a red fire department automobile which was being driven by another fireman. They entered Bingle Road from the east at Longpoint Road and had traveled north about a block. A car ahead of them in their lane of traffic, headed north, was stopped with its turning signal on waiting for southbound traffic to pass so it could make a left turn. The plaintiff's driver applied his brakes so as to come to a gradual stop. His care either had just stopped or was almost stopped when it was struck from the rear.

The defendant, Mrs. Jordan, had stopped at the intersection of Bingle and Longpoint. There she picked up a young lady who was standing at the corner and whom she knew. After so stopping she proceeded north on Bingle Road. Mrs. Jordan testified that she first saw the car in which the plaintiff was riding when she was three car lengths from it, that it was stopping and its brake lights were on. She was driving 20 m. p. h. There was no obstruction which would have kept her from seeing the car sooner and she gave no explanation for not having done so.

Mrs. Jordan testified that after seeing that the car ahead was stopping she applied her brakes "softly." She then looked into her rear-view mirror and saw a car entering Bingle from a parking area on the west side of the street—to her left. She said she thought the car was going to hit her car. This other car, however, did not have anything to do with the character of the lookout which Mrs. Jordan had kept before she saw the car in which the plaintiff was riding because she testified that she had already seen the plaintiff's car and applied her brakes before she saw the car entering Bingle from the parking area. In response to questions by her attorney she testified:

Q. "Now, what I want to know is this: Had you already seen the vehicle, the fire car, and made the application of your brakes at that time when you saw this other car, or was that beforehand?"

A. "I had already seen the car I was following, the red car."

Q. "All right. By the time that you saw it, had you already applied your brakes?"

A. "Yes, sir."

Q. "Now, you said when you saw this other car, that you looked in your rear view mirror?"

A. "Yes, sir."

Q. "Why?"

A. "I thought it was going to hit the back of my car."

It had been raining lightly for some time before the collision. Mrs. Jordan testified that just before the collision she had driven to and from a point about 20 miles from the scene of the collision, that during that drive she had stopped many times and that on each occasion her brakes had operated properly. She testified that her car generally and her brakes in particular were in good working order. Her car was driven from the scene of the collision and was driven thereafter and the brakes continued to work properly. In response to questions by her lawyer she testified:

Q. "Well, let me put it this way. If the car had acted the same way on that occasion that it had acted on other occasions when you had applied the brakes on that same day under similar conditions, could you have stopped, using the application of brakes that you did, before you reached that vehicle in front of you?"

A. "Yes, sir."

Q. "What was different about the situation on this occasion?"

A. "Well, when I applied my brakes harder, it seemed to have—it felt liked they locked and I slid."

We do not believe that the quoted testimony is any more than a scintilla of evidence that an unexpected malfunction of the brakes on Mrs. Jordan's car, abnormally slick pavement or something else that could not have been anticipated occurred. The testimony is simply Mrs. Jordan's expression of an opinion that she made a timely and proper application of her brakes. The police officer who investigated the accident testified that the street was wet but was in good condition, that Mrs. Jordan's car left 14 feet of skid marks and that the plaintiff's car moved forward 30 feet after it was struck. There was no evidence of any mud or anything else on the street that would have made it unusually slick. The officer's uncontradicted testimony, together with Mrs. Jordan's own testimony to the effect that her brakes worked properly both before and after the collision, conclusively refutes Mrs. Jordan's expression of opinion as to the timeliness and propriety of her application of the brakes. Her testimony further was refuted by a written statement she made to representatives of the Fire Department two days after the accident. In that statement she said, "In my opinion the wreck resulted because I did not see the other vehicle stopping soon enough so that I could start applying my brakes sooner."

In automobile collision cases a review of other opinions usually is of little help in determining the issues of liability. The facts of each case are different from those of any other case. However, some opinions in other cases which, under somewhat similar facts, have held that liability was shown as a matter of law are Erck v. Zelios, Tex.Civ.App., 401 S.W.2d 867, no writ hist.; Sumners Road Boring, Inc. v. Thompson, Tex.Civ.App., 393 S.W.2d 690, writ ref., n.r.e.; Meinen v. Mercer, Tex. Civ.App., 390 S.W.2d 36, writ ref., n.r.e.; Hoey v. Solt, Tex.Civ.App., 236 S.W.2d 244, no writ hist.

■ The trial judge did not err in withdrawing the liability issues from the jury and in holding, as a matter of law, that Mrs. Jordan was guilty of negligence which proximately caused the collision. Since that was true the collision, by definition, could not have been the result either of an unavoidable accident or a sudden emergency. Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379; Goolsbee v. Texas & N.O.R. Co., 150 Tex. 528, 243 S.W.2d 386. The trial court, therefore, properly refused to submit the requested special issues as to those defenses.

The recitation of evidence upon which it is held that the trial court properly withdrew the liability issues from the jury is the most favorable analysis from the standpoint of the defendants, that can be made under the record. Most of the facts set forth as supporting the trial court's ruling are taken from the testimony of the defendant, Mrs. Jordan. Wherever there was any variation in her testimony we have taken that which most favored her. For instance, on deposition and on examination by plaintiff's attorney, she testified that her speed when she first saw the plaintiff's car was 25 miles per hour, but on examination by her attorney she testified that her speed was 20 miles per hour. The latter figure has been assumed to represent her speed. We have quoted those parts of Mrs. Jordan's testimony which came closest to raising fact questions. Such a consideration of the record is required in passing on the propriety of the trial court's withdrawal of the liability issues from the jury and finding liability as a matter of law. As so considered the record shows that as she approached the point where the plaintiff's car was stopping, Mrs. Jordan failed to keep such a lookout as would have been kept by a person of ordinary prudence in the exercise of ordinary care, under the same or similar circumstances, that she failed to apply her brakes as soon as a person of ordinary prudence, in the exercise of ordinary care, would have applied them under the same or similar circumstances and that each of such failure was a proximate cause of the

collision in question. Either of such failures, as a proximate cause, sustains the trial court's ruling.

■ For the period of time from October 3, 1966 to October 15, 1966, the plaintiff was confined to a hospital. The plaintiff did not contend that such hospitalization was caused by his injuries which were received in the collision in question. The defendants' attorney tried to ask him if he didn't go to the hospital on that occasion because of the fact that he had just learned that he was a suspect in a burglary. When the trial court sustained objections to the interrogation the defendant made a bill of exceptions. On the bill the plaintiff testified that he did not learn of the fact that he was such a suspect until after he got out of the hospital. The bill fails to show error in the excluding of the testimony.

Appellant's fourth point of error is:

"This case should be reversed because the Trial Court erred in excluding evidence from the jury that as of the date of the trial, the Appellee had been paid in full his salary, complete with increases, for the full period of his absence from work from October 19, 1966 through November 21, 1968, as such evidence related to the alleged loss of earning capacity of the Appellee."

■ The appellants suggest no theory under which the tendered evidence was admissible and cite no authority to the effect that its exclusion was error. As noted above, the plaintiff did not seek recovery of lost wages but a recovery for lost earning capacity. The payment to plaintiff, after his suspension was lifted, of the wages that he would have earned during the period of his suspension had he worked obviously had no relevance. It was paid not for services performed, but pursuant to a Civil Service regulation. As such, it was from a collateral source and evidence concerning it was properly excluded. Kainer v. Walker, (Tex.Sup.Ct.), 377 S.W.2d 613;

Walker v. Missouri Pacific Co., Tex.Civ. App., 425 S.W.2d 462, writ ref., n. r. e.

The judgment of the trial court is affirmed.