Kathryn PRIEST et vir, Appellants,

v.

Larry MYERS, Appellee.

No. B2279.

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 9, 1980.

E. Ray Edwards, Miller, Gann, Fried & Edwards, Houston, for appellants.

Marc S. Sheiness, Hicks, Hirsch, Glover & Robinson, Houston, for appellee.

Before COULSON, SALAZAR and JUNELL, JJ.

JUNELL, Justice.

Larry Priest and wife, Kathryn Priest, plaintiffs below, appeal from a take nothing judgment entered after a jury trial. We will designate the parties as they appeared in the trial court. Plaintiffs' automobile was struck from the rear by an automobile driven by the defendant, Larry Myers. The jury found that the defendant did not fail to keep a proper lookout, that he failed to maintain an assured clear distance between his vehicle and the Priest vehicle, but that such failure was not a proximate cause of the collision. The jury also found that plaintiff Kathryn Priest had sustained damages totaling $6,500.00 by reason of personal injuries received in the accident.

Plaintiffs moved that the court disregard the negative findings on improper lookout and on proximate cause on the assured clear distance issue and that the court enter judgment in favor of the plaintiffs notwithstanding said findings of the jury. This motion was grounded on contentions that as a matter of law (1) defendant failed to keep a proper lookout, (2) such failure was a proximate cause of the collision, and (3) defendant's failure to maintain an assured clear distance between his vehicle and that of the plaintiffs was a proximate cause of the collision.

The trial court overruled plaintiffs' motions and rendered judgment in favor of defendant.

Under their first point of error plaintiffs contend that the trial court erred in overruling plaintiffs' motion for judgment notwithstanding the jury findings because the evidence proves conclusively as a matter of law that defendant's failure to maintain an assured clear distance was a proximate cause of the collision. In their second point plaintiffs urge that the trial court erred in overruling plaintiffs' motion for new trial because the finding of no proximate cause on the assured clear distance issue is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We sustain appellants' first point of error.

In passing on these points it is necessary to set forth in some detail the evidence in the record.

On March 13, 1975 at about 4:30 p. m., while evening rush-hour traffic was very heavy, the defendant's car struck the rear of the plaintiffs' car. The collision occurred in the city of Houston on the southbound side of Loop 610 at a point between the overpass at Westheimer and the overpass at Highway 59 (the Southwest Freeway). Both vehicles were being driven south from Westheimer on the feeder street. They had passed along the entrance ramp to Loop 610 and had been driven into the next lane to the left of the entrance ramp lane. At this point on Loop 610 there are five lanes, which will be referred to as lanes 1 through 5, lane 1 being the extreme left hand lane next to the guard rail dividing the southbound lanes from the northbound lanes. Lane 5, the extreme right hand lane, is a continuation of the entrance ramp lane and extends for some distance to the south and then becomes the exit ramp to Richmond Avenue. Lane 4 extends some distance further to the south, where it becomes an exit from Loop 610 to Highway 59. It is not possible to remain in lane 4 and proceed on Loop 610 over the overpass at Highway 59. Lanes 1, 2 and 3 are the traffic lanes for all traffic on Loop 610 desiring to go over that overpass and continue to the south on Loop 610.

The defendant's vehicle followed the plaintiffs' vehicle through the entrance ramp (Lane 5). Defendant looked over his left shoulder to see if any traffic was com-

ing and moved to his left into lane 4, still remaining behind the plaintiffs' vehicle, which also moved to its left into lane 4. Both vehicles continued in lane 4 for about 200 yards to the point where the collision occurred.

As the vehicles proceeded through the entrance ramp and continued on to the south in lane 4, the defendant's car was about two to three car lengths behind the plaintiffs' car. Both cars were moving along with the flow of traffic. As the cars went through the entrance ramp, they were traveling at a speed of 30 to 35 miles per hour. They continued south at about 30 miles per hour. After traveling some distance in lane 4, defendant checked traffic to his left to see whether lane 3 was clear so that he could move over into it. At that time the nearest vehicle in lane 3 was about eight car lengths back. The defendant's car traveled only 50 to 75 feet after he first checked for traffic in lane 3; and while traveling that distance, he put on his left turn blinker and prepared to move to his left into lane 3. At that time something caught his eye, either in his rear-view mirror or his left-hand side mirror. It appeared that a vehicle traveling either in lane 3 or lane 2 had moved up faster than expected; the defendant looked again over his left shoulder and saw that the vehicle in lane 3 was still four to six car lengths back, far enough for defendant to move safely into lane 3. At this point the defendant estimated his speed at 20 to 30 miles per hour. After looking back over his left shoulder the second time, he looked forward again as he started to move to his left and saw that the front of his car was very close to the rear of the plaintiffs' car. The plaintiffs' car was either stopped or moving at a very low rate of speed and was too close for the defendant to be able to stop or to move over into lane 3. He tried to apply his brakes but did not have enough room for much braking effect. The defendant was still moving at 20 to 30 miles per hour at the instant of impact. The right half of the front end of the defendant's car struck the left half of the rear of the plaintiffs' car.

Larry Priest, driver of the plaintiffs' vehicle, testified that shortly before the collision he noticed the cars in front of him suddenly coming to a stop. At another point he described the situation as a quicker than normal stop, but not an emergency stop. When he first noticed the cars stopping in front of him, Priest was about two car lengths behind the car in front of him; he had no difficulty in bringing his car almost to a stop some 10 to 20 feet behind the car just ahead. About the time that Priest had his car almost stopped, he glanced in his mirror and saw the defendant looking back over his left shoulder as if he were preparing to change lanes. Plaintiff released his brakes somewhat and let his car move forward a little, thinking that the defendant might miss him. The impact occurred, however, and the plaintiffs' vehicle was knocked into the car ahead of him.

There is no material dispute in the evidence, and the above recitation of the evidence is the most favorable analysis from the standpoint of the defendant that can be made under the record.

Special Issue No. 3 in the court's charge to the jury inquired whether the defendant failed to maintain an assured clear distance between his vehicle and the vehicle driven by Larry Priest. In connection with that special issue the court gave the following definition:

> " 'Assured clear distance' means *that distance which would be maintained by a driver using ordinary care* when following another vehicle, considering the speed of such vehicles, and the traffic upon and conditions of the street, so that the following vehicle can be safely brought to a stop without colliding with the preceding vehicle, or veering into other vehicles, objects or persons on or near the street." (emphasis added.)

This definition, coupled with the definitions of "ordinary care" and "negligence" contained in other parts of the court's charge, made Special Issue No. 3 a negligence issue; and the jury's affirmative answer thereto was a finding of negligence on the part of the defendant.

■ In passing on the plaintiffs' first point of error we must view the evidence in the light most favorable to the defendant and determine whether the evidence in the record proves conclusively as a matter of law that the negligence found by the jury in answer to Special Issue No. 3 was a proximate cause of the collision in question. Ordinarily, of course, the question of whether an act of negligence was a proximate cause of the consequences presents an issue for determination by the fact-finder. However, where the evidence is without material dispute and where only one reasonable inference may be drawn therefrom, a question of law is presented. *Lechner v. Kelley*, 467 S.W.2d 652 (Tex.Civ.App.—Tyler 1971, writ ref'd n. r. e.).

It was aptly pointed out by then Chief Justice Tunks of this court in *Jordan v. Walker*, 448 S.W.2d 837 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.), that in automobile cases a review of other opinions is usually of little help in determining the issues of liability, the facts of each case being different from those of any other. In that case the trial court had instructed a verdict for the plaintiff in a rear-end collision case, and the court of civil appeals affirmed, holding that as a matter of law the defendant, whose car had hit the rear-end of the plaintiff's car, was negligent in failing to keep a proper lookout and in failing to make a timely application of his breaks and that each of such negligent failures constituted a proximate cause of the collision.

The case of *Clark v. Waggoner*, 452 S.W.2d 437 (Tex.1970) involved facts somewhat similar in material respects to those in the instant case. There the jury had found the defendant, whose car had rearended the plaintiff, negligent in failing to keep a proper lookout. The jury had answered in the negative the corollary issue on proximate cause. The trial court granted the plaintiff's motion for judgment notwithstanding the jury's answer to the proximate cause issue, holding the defendant's improper lookout was a proximate cause as a matter of law. The court of civil appeals reversed and rendered, holding that the proxi-

mate cause issue was one of fact for the jury's determination. The supreme court, however, reversed the court of civil appeals and affirmed the judgment of the trial court, holding that proximate cause was established as a matter of law. In that case Waggoner was following Clark on College Street in Lubbock, Texas. The Clark vehicle was stopped by a signal from a workman, apparently because of the maneuvering of a telephone pole over the street ahead. Waggoner had looked away to locate house numbers; when he looked ahead again, he was too close to stop and collided with the rear-end of the plaintiff's vehicle.

In the instant case plaintiffs had to slow down or almost stop because the traffic ahead for some reason did the same, and the defendant Myers looked away (back over his left shoulder) to see if he could safely change lanes. The jury may well have believed that Myers was acting reasonably in looking back to see if he could change lanes safely and, thus, found that his lookout was not improper, but that, nevertheless, he did not use ordinary care in maintaining an assured clear distance between his car and that of the plaintiffs. The jury very properly could have concluded that the defendant should have dropped back more than 2 to 3 car lengths behind the plaintiffs' car before looking back to see if he could safely change lanes. This analysis would explain the jury's failure to find improper lookout even though it found the defendant failed to maintain an assured clear distance.

■ Based on the evidence in the record, considered in the light most favorable to the defendant, we hold that as a matter of law the failure of the defendant to maintain an assured clear distance between his car and that of the plaintiffs was a proximate cause of the collision. The undisputed evidence is that the plaintiffs and the drivers of the cars in front of the plaintiffs safely stopped or almost stopped without any collision. The only reasonable inference that can be drawn from the undisputed evidence is that the defendant's failure

to maintain an assured clear distance between his car and that of the plaintiffs was a proximate cause of the collision. Both elements of proximate cause (cause in fact and foreseeability) are present. The defendant Myers cannot now be heard to urge that he believed the plaintiffs would continue moving forward and did not anticipate or foresee that the plaintiffs would stop in front of him while he looked back over his left shoulder. The test is not what he believed would occur but whether he reasonably should have foreseen that the event in question, or some similar event, would occur. *Clark v. Waggoner, supra.* We are convinced that any reasonably prudent person should have foreseen that in late afternoon, rush-hour, going-home traffic on a crowded freeway in Houston, traffic ahead for some reason might have to make a sudden or quicker than normal stop and that, under those circumstances, a collision would occur if he did not exercise ordinary care to maintain a safe distance between his car and the one just ahead.

We believe our decision on this point is supported by the decisions in *Clark v. Waggoner,* 452 S.W.2d 437 (Tex.1970); *Meinen v. Mercer,* 390 S.W.2d 36 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); *Lechner v. Kelley,* 467 S.W.2d 652 (Tex.Civ.App.—Tyler 1971, writ ref'd n. r. e.); *Erck v. Zelios,* 401 S.W.2d 867 (Tex.Civ.App.—Dallas 1966, no writ); and *Jordan v. Walker,* 448 S.W.2d 837 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.).

If we were not holding that there is proximate cause as a matter of law, we would hold that the great weight and preponderance of the evidence shows that the defendant's failure to maintain an assured clear distance was a proximate cause of the collision. We would sustain appellant's second point and reverse and remand the case for a new trial.

■ Based on the above recitation and analysis of the evidence, we hold that improper lookout on the part of the defendant was not proved as a matter of law and that the jury finding on the lookout issue is not against the great weight and preponderance of the evidence. We make this holding even though there was an abundance of evidence which would have justified the jury in finding improper lookout on the part of the defendant. Again, in this instance a review of opinions in other cases is not of too much help; however, the following cases involved rear-end collisions where the jury found for the defendant on the lookout issue and the appellate court held that such finding was not against the great weight and preponderance of the evidence: *Gonzales v. Whitsitt,* 583 S.W.2d 468 (Tex.Civ.App.—El Paso 1979, no writ); *Klein v. Brown-Griffin Texaco Distributors,* 562 S.W.2d 910 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.); *Clodfelter v. Martin,* 562 S.W.2d 491 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Rampy v. Allstate Insurance Company,* 492 S.W.2d 85 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.); *Moreno v. Gates,* 449 S.W.2d 366 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.); and *Langford v. Pearson,* 334 S.W.2d 473 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.).

■ In the third point of error plaintiffs claim the trial court erred in submitting to the jury an instruction regarding "sudden emergency" claiming there is no evidence of sudden emergency in this case.

We sustain this point of error. This would require a reversal and remand to the trial court for a new trial but for our holding on the first point discussed above.

The trial court gave the following instruction on sudden emergency:

"When a person is confronted by an emergency arising suddenly and unexpectedly, not proximately caused by any negligence on his part, and which to a reasonable person requires immediate action without time for deliberation, his conduct in such emergency is not negligence or a failure to use ordinary care, if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances."

Mr. Justice Keith's opinion for the Beaumont Court of Civil Appeals in *Deviney v.*

*McLendon*, 496 S.W.2d 161 (Tex.Civ.App.— Beaumont 1973, writ ref'd n. r. e.), contains a very good discussion of this question. On on facts somewhat similar to those in the instant case the Beaumont Court of Civil Appeals held that the giving of a sudden emergency instruction was improper and harmful to the plaintiff and that the trial court's error required a reversal and remand for a new trial.

In the instant case we hold that the evidence in the record did not justify the trial court's giving the instruction on sudden emergency and that the giving of such instruction was prejudicial to the plaintiffs. If we were not reversing and rendering judgment in favor of the plaintiffs, we would reverse and remand for a new trial because of the error in giving the sudden emergency instruction.

We have considered appellants' remaining points of error. Finding no merit in them, we overrule them.

Having sustained appellants' first point of error, we reverse the judgment of the trial court and render judgment in favor of the appellants, plaintiffs in the court below, in the amount of $6,500.00.

Reversed and rendered.