Opinion issued May 19, 2005
     










In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00554-CV




MAETHENIA JORDAN, Appellant

V.

SAVA, INC. AND JOHN D. MOORE, Appellees




On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2000-52097




O P I N I O N

          Appellant, Maethenia Jordan, appeals a take-nothing judgment rendered in her
personal injury suit against appellees, Sava, Inc. and John D. Moore. In seven issues,
Jordan contends (1) the trial court erred in denying her challenges for cause of two
jurors who admitted bias; (2) everyday rush-hour traffic in Houston does not
constitute a “sudden emergency” justifying a jury instruction; (3) Moore’s and Sava,
Inc.’s counsel improperly embellished and mischaracterized the court’s charge; (4)
an “eggshell skull” instruction should have been given to the jury; (5) the trial court
should not have rendered a directed verdict for Sava, Inc.; (6) the jury’s answer to
question one, regarding Moore’s liability, was wrong as a matter of law and was
against the great weight and preponderance of the evidence; and (7) the jury’s answer
to question two, regarding damages, was against the great weight and preponderance
of the evidence. We affirm.
Facts
          On September 20, 1999, Moore was driving a tractor-trailer rig, minus the
trailer, on Loop 610 North in Houston. The speed limits were a minimum of 40 and
a maximum of 55 miles per hour; Moore’s speed was approximately 45 mph.


 As
Moore crested a hill just before the Wayside exit, he came upon a motionless line of
cars in the same lane waiting to exit. The car directly in front of Moore swerved into
the left lane; Moore swerved into the emergency lane to the right of the exit lane. 
Moore shifted down and intentionally “rode the guardrail” as he proceeded, to
augment his attempt to bring the rig to a stop, but drove over some grass on the side
of the road that caused the rig to skid slightly. Moore passed as many as eight to
fifteen cars before the emergency lane merged into the exit lane and ended. To the
right of the emergency lane was a drop-off over an embankment. When he realized
he was running out of room as the emergency lane merged with Jordan’s lane, Moore
thought he could steer through an opening of ten to twelve feet between Jordan’s
Ford Expedition and the car behind her. Instead, his tractor-trailer cab collided with
the rear end of Jordan’s Expedition, spinning the Expedition 180 degrees before
traveling across the freeway and coming to rest against the divider between the
oncoming lanes of traffic.


 
          Moore and his front-seat passenger, Jesse McGraw, an EMT, checked on
Jordan and her passenger and called EMS. Jordan was taken to a local hospital by
ambulance. She had injured her back, resulting in a number of physical and practical
impairments to her life. A police officer who happened to be traveling along this
route stopped to investigate the accident. He issued Moore a citation for “failure to
control speed,” but did not cite him for speeding.
          Jordan sued Moore for negligence and sued the company that owned the
tractor-trailer, Sava, Inc., for, among other causes of action, negligent entrustment
under the doctrine of respondeat superior. After a jury trial in which the jury
determined that Moore was not liable, the trial court rendered a take-nothing
judgment for Jordan with prejudice.
Challenges to Venire Members
          In her first issue, Jordan contends the trial court erred by denying her
challenges for cause to two jurors who she contends were biased in favor of Moore,
thereby forcing her to use peremptory strikes on these jurors instead of on two other 
jurors whom she found objectionable.
          Standard of Review
          A person is disqualified to serve as a petit juror if he has a prejudice for or
against a party in the case. Tex. Gov’t Code Ann. § 62.105(4) (Vernon 1986). A
person my be disqualified if the prejudice extends to the subject matter of the
litigation, including damages for pain and suffering. Compton v. Henrie, 364 S.W.2d
179, 182 (Tex. 1963). We review a trial court’s decision to disqualify a panel
member under an abuse of discretion standard. Buls v. Fuselier, 55 S.W.3d 204, 209
(Tex. App.—Texarkana 2001, no pet.). A trial court abuses its discretion in refusing
to disqualify a venire member only if the record shows that the venire member was
not able or willing to set aside personal beliefs to act impartially. Id. at 210. A trial
court’s overruling a challenge for cause carries with it an implied finding that bias
does not exist to the degree that it constitutes disqualification. Id. at 209–10. Thus,
when the evidence does not conclusively establish a venire member’s
disqualification, we consider the evidence in the light most favorable to the trial
court’s ruling. Id. at 210.
          Venire Member Number 17 
          During voir dire, venire member 17 expressed reservations about awarding a
plaintiff damages for pain and suffering. The following colloquy took place:
Counsel:[I]n terms of an award above and beyond just medical bills,
whether they have seen a doctor or not, would you have a
hard time doing that?
 
No. 17:Yes.
 
Counsel:[G]iven that you feel that way . . . do you think you could
be an impartial juror, given the fact that you have those
beliefs when at the end of this trial you will be
asked—there will be a blank for pain and suffering and
mental anguish.
 
No. 17:That is pretty tough. I haven’t heard the case yet. Yes, I
think I would have trouble. Would it affect me? Yes,
because that is just the way I believe. That is the way I
would feel.

          Shortly thereafter, the trial court individually questioned this venire member,
as follows:
Court:I think what we are dealing with here is the law allows the
prevailing party who has suffered a personal injury in a
proper case to recover their medical bills from a party that
caused them that injury if certain findings are made. 
Assuming all of that, what he is asking you about is one of
the things that the law allows you to recover. You can
recover your medical bills, you can recover lost wages if
you miss work because you were laid up. But if you suffer
pain, the law allows you to be compensated in the proper
case. If you have suffered mental anguish, the law allows
you to be compensated for that in the proper case. The
question is: can you award that in the proper case or can
you sit here and say, I believe in awarding A, B, and C, but
I don’t believe in D?
 
No. 17:I think I would follow the instructions. Would it be real
difficult for me to say, yes, I believe someone needs money
for pain and suffering? Probably that would be a difficult
thing. I am a pretty reasonable person. I just . . .
 
          Counsel:      There is nothing wrong with that.
 
No. 17:It is just really I can see the wages and all that stuff. I have
dealt with my father who was a doctor. It seems like
sometimes people are just getting a little out of hand with
prices and that is one area that I can see would get out of
hand because there is no way to measure it.
 
          Counsel:      Are you going to penalize Ms. Jordan for it?
 
          No. 17:        No, I won’t penalize her.

After the trial court denied Jordan’s challenge for cause, Jordan used a peremptory
strike to exclude venire member 17 from the jury. Venire member 17’s replies to the
trial court’s inquiries do not demonstrate that she would not have been able to set
aside her personal beliefs to act impartially, thus penalizing Jordan. Accordingly, the
trial court did not abuse its discretion in denying the challenge for cause to venire
member 17. See Buls, 55 S.W.3d at 210 (trial court abuses discretion in refusing to
disqualify only when record shows venire member unable or unwilling to act
impartially); see also Sosa v. Cardenas, 20 S.W.3d 8, 11–13 (Tex. App.—San
Antonio 2000, no pet.) (affirming trial court’s denial of challenges for cause of
several jurors who indicated bias against awarding damages for mental anguish, but
agreed it would depend on evidence presented, and who did not indicate they would
not follow court’s instructions).
          Venire Member Number 20
          In regard to venire member 20, there was little in the record to reflect her
alleged bias. The following colloquy is the only one that occurred:
          Counsel:      You raised your hand.
No. 20:I think everybody suffers on a daily basis on pain and they
don’t get compensation.
 
Counsel:What if you had severe pain that prevented you from going
to work?
 
No. 20:Well, you have your medical and everything is paid for. 
Pain and suffering, somebody is giving you something for
pain and suffering, and therapy. Not really. I don’t think
that pain and suffering would be something that you would
get unless it was a child or grandma or somebody that was
with you and it is there, really.

This answer does not sufficiently demonstrate a degree of bias that would lead us to
conclude that the trial court abused its discretion in denying Jordan’s challenge for
cause of venire member 20. See Kiefer v. Continental Airlines, Inc., 10 S.W.3d 34,
39 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding trial court did not
err in denying challenge for cause to juror who said he would have a “difficult time”
awarding damages for pain and suffering). Jordan did not ask additional questions
of this venire member or attempt to rehabilitate her in any way. 
          Although Jordan suggests in her reply brief that she had no obligation to
investigate further, that position is not supported by applicable case law, because bias
is not presumed in regard to a venire member’s answers during voir dire; rather, it
must be proved. Buls, 55 S.W.3d at 210. Nor is bias shown based on answers to
general questions, because such questions are usually insufficient to provide the
diligence required to probe a venire member’s mind. Id. Jordan bore the burden of
showing that venire member 20’s state of mind would naturally lead to the inference
that she could not act impartially. Id. at 209. Because she did not satisfy this burden,
we hold that the trial court did not err in denying the challenge for cause to venire
member 20.
          We overrule the first issue.
“Sudden Emergency” Instruction in Jury Charge
          In her second issue, Jordan contends the trial court erred in submitting a
“sudden emergency” instruction to the jury over her objection.
          Standard of Review
          A trial court has broad discretion in determining its instructions to the jury. 
Evans v. Allwhite, 111 S.W.3d 282, 284 (Tex. App.—Texarkana 2003, no pet.); 
Francis v. Cogdell, 803 S.W.2d 868, 870 (Tex. App.—Houston [1st Dist.] 1991, no
writ). If a doctrine has been pled, and there is some evidence of probative value to
support its application, the trial court has a duty to properly instruct the jury to assist
it in reaching its verdict. DeLeon v. Pickens, 933 S.W.2d 286, 290 (Tex.
App.—Corpus Christi 1996, writ denied); Charter Oak Fire Ins. Co. v. Taylor, 658
S.W.2d 227, 229 (Tex. App.—Houston [1st Dist.] 1983, writ ref’d n.r.e.). If there is
conflicting evidence regarding whether there was a sudden emergency, the trial court
should submit the requested instruction. Oldham v. Thomas, 864 S.W.2d 121, 127
(Tex. App.—Houston [14th Dist.] 1993), aff’d in part & rev’d in part on other
grounds, 895 S.W.2d 352 (Tex. 1995). Indeed, if there is “any support in the
evidence for an [sudden emergency] instruction, the instruction is properly given.”
Francis, 803 S.W.2d at 871 (emphasis in original). On appeal, the reviewing court
must examine the pleadings, the evidence presented, and the jury charge; any error
regarding a requested instruction will not be deemed reversible unless it “was
reasonably calculated to cause and probably did cause rendition of an improper
judgment.” DeLeon, 933 S.W.2d at 290–91 (quoting former Tex. R. App. P.
81(b)(1)); Louisiana-Pacific Corp. v. Knighten, 976 S.W.2d 674, 676 (Tex. 1998).
          Evidence of Sudden Emergency
          The sudden emergency instruction submitted to the jury stated,
“Emergency” means if a person is confronted by an “emergency”
arising suddenly and unexpectedly, which was not proximately
caused by any negligence on his part and which, to a reasonable
person, requires immediate action without time for deliberation,
his conduct in such an emergency is not negligence or failure to
use ordinary care if, after such emergency, arises, he acts as a
person of ordinary prudence would have acted under the same or
similar circumstances.

The instruction was in the form approved by the Texas Supreme Court. See Thomas
v. Oldham, 895 S.W.2d 352, 360 (Tex. 1995).
          For an instruction on sudden emergency to be proper, the evidence must
demonstrate the elements of a sudden emergency: (1) the emergency condition arose
suddenly and unexpectedly; (2) the condition was not proximately caused by the
negligent act or omission of the person whose conduct is under inquiry; and (3) after
a condition arose that to a reasonable person would have required immediate action
without time for deliberation, the person acted as a person of ordinary prudence
would have acted under the same or similar circumstances. See Thomas, 895 S.W.2d
at 360; Evans, 111 S.W.3d at 286; Priest v. Myers, 598 S.W.2d 359, 363 (Tex.
App.—Houston [14th Dist.] 1980, no pet.). To determine whether a sudden
emergency instruction was proper in this case, we must determine whether the
evidence raised a fact issue as to each of the elements of sudden emergency.
          Sudden and Unexpected Condition
          No court has created a test as to the maximum length of time after which a
condition cannot be said to “arise suddenly and unexpectedly.” Here, the sudden
appearance of stopped and slowing vehicles, from the defendant’s perspective, creates
the emergency condition. Thus, even though a line of cars stopped on the blind side
of an overpass on a highway may not have been created “suddenly,” the condition of
a driver coming upon such a scene still can be considered to have “arisen suddenly”
so as to satisfy the first element of the sudden emergency doctrine.


 Here, that is
precisely what occurred. The line of cars that Moore came upon were not in sight
while he was driving on one side of the overpass, but then, suddenly, they became
visible to Moore as he descended the blind side of the overpass. 
          A number of courts have submitted a sudden emergency instruction when an
act of nature was a factor in a collision. See Louisiana-Pacific Corp., 976 S.W.2d at
676 (sudden emergency instruction did not cause rendition of improper judgment
where defendant ran into plaintiff from behind after plaintiff abruptly applied her
brakes on wet street in rain); Francis, 803 S.W.2d at 871 (testimony that rear-end
collision was caused by plaintiff suddenly slamming on brakes while light was yellow
during morning rush hour in rain on wet and slick roads supported trial court’s
instruction on sudden emergency); Crowley v. Babolcsay, 611 S.W.2d 492, 494 (Tex.
App.—Austin 1981, writ ref’d n.r.e.) (sudden emergency instruction was warranted
where evidence showed defendant swerved into wrong side of the road to pass car in
front of him, leading to head-on collision with plaintiff on top of “blind” hill on rainy
afternoon).
          However, an act of nature is not a necessary prerequisite for a sudden
emergency. See DeLeon, 933 S.W.2d at 286 (“emergency” arose after truck darted
across four lanes from a private driveway causing actions resulting in collision).
Moreover, even in cases involving acts of nature, the emergency condition is not said
to be the act of nature, but rather the driver’s encountering another vehicle under
sudden and unexpected circumstances not created by his own wrongful actions,
whether it is a stopped car, a car slowing down, or an oncoming car in the same lane
of traffic. See Reinhart v. Young, 906 S.W.2d 471, 472 (Tex. 1995) (finding no error
in submission of both “unavoidable accident” instruction and sudden emergency
instruction when driver rear-ended car stopped on blind side of overpass);


 Bounds
v. Scurlock Oil Co., 730 S.W.2d 68, 71 (Tex. App.—Corpus Christi 1987, writ ref’d
n.r.e.) (holding sudden emergency instruction not error where driver who struck car
on shoulder was traveling around curve just before accident and had been “blinded”
by headlights of oncoming car). Similarly, the “sudden emergency” here was
Moore’s coming upon stopped or slow-moving vehicles on the blind side of an
overpass on a freeway.
          Jordan characterizes the road conditions as being standard rush-hour, bumper-to-bumper traffic, implying that stoppages on the freeway were to be expected. 
However, this characterization is not wholly supported by the record. Other than
references at different points during trial that the accident occurred in the afternoon
or in the evening, the exact time of the accident is not specified, except by Jordan,
who stated that it was “somewhere between five and six.” Jordan also testified,
however, that the traffic was “busy going both directions.” Nor is there any evidence
to show that traffic in lanes other than the exit lane to Wayside was bumper-to-bumper.


 Rather, Moore stated that he was traveling the same speed as the car
directly in front of him when they crested the overpass. 
          Moore could not have known what the cars on the blind side of an overpass
were doing unless there was some indication by cars in front of him slowing down
before he himself drove over the overpass. He testified that he saw neither stopped
vehicles nor vehicles that were slowing down ahead of him before he came down the
blind side of the overpass. He also testified that he saw no brake lights from vehicles
ahead of him that would indicate heavy traffic or vehicles that were slowing down or
stopping entirely. Nor did he see any indication of congestion prior to encountering
the emergency, as any congestion that existed was on the blind side of the overpass.
          We conclude that there is evidence from which the jury could have concluded
that the emergency condition arose suddenly and unexpectedly. 
          Pre-Collision and Post-Collision Negligence and Proximate Cause
          Texas courts have found the sudden emergency doctrine applicable in cases
involving rear-end collisions where the defendant’s negligent actions were a result
of emergency conditions, but not where the defendant’s actions prior to the
emergency were negligent. See, e.g., DeLeon, 933 S.W.2d at 294; Oldham, 864
S.W.2d at 127. In short, the evidence must be such that the jury could find that the
collision was not proximately caused by the defendant’s own pre-emergency
negligence. 
          Here, the jury was instructed on negligence and proximate cause as follows:
“Negligence,” means failure to use ordinary care, that is, failing
to do that which a person of ordinary prudence would have done
under the same or similar circumstances or doing that which a
person of ordinary prudence would not have done under the same
or similar circumstances.
 
“Ordinary care” means that degree of care that would be used a
person or ordinary prudence under the same or similar
circumstances.
 
“Proximate cause” means that cause which, in a natural and
continuous sequence, produces an event, and without which cause
such event would not have occurred. In order to be a proximate
cause, the act or omission complained of must be such that a
person using ordinary care would have foreseen that the event,
or some similar event, might reasonably result therefrom.
 
There may be more than one proximate cause of an event, but if
an act or omission of any person not a party to the suit was the
“sole proximate cause” of an occurrence, then no act or omission
of any other person could have been a proximate cause.

The charge follows the Texas Pattern Jury Charges on negligence, proximate cause
and sole proximate cause. See Comm. on Pattern Jury Charges, State Bar of
Tex., Texas Pattern Jury Charges PJC 2.1, 2.4, 3.2 (2003) (emphasis in original). 
Here, Jury Question 1 asked whether appellant’s negligence proximately caused “the
occurrence in question.” The jury responded, “No.” We must determine, therefore,
whether the jury’s negative answer has support in the record.
          While the law provides that a motorist driving behind another vehicle must
drive at a reasonable speed, keep back a reasonable distance, and keep his vehicle
under reasonable control to provide for the contingency that a vehicle in front may
suddenly stop, the mere occurrence of a rear-end collision does not establish
negligence as a matter of law. See DeLeon, 933 S.W.2d at 289. Rather, whether a
rear-end collision raises an issue of negligence or establishes negligence as a matter
of law depends on all the facts and circumstances of the case. Id. 
          Here, the undisputed evidence establishes that Moore acted after the
emergency arose as a person of ordinary prudence would have acted under the same
or similar circumstances. Moore and McGraw both testified that the line of stopped
cars was so close when Jordan crested the hill that evasive action was necessary. 
Jordan likewise admitted that evasive action to avoid a collision is necessary when
a driver comes over an overpass and finds traffic stopped in his lane. The undisputed
evidence establishes that when Moore came over the overpass in the exit lane and saw
the stopped cars directly in front of him, he immediately took necessary evasive
action—swerving to the right into the emergency lane to avoid hitting the stopped
cars in front of him or the traffic in the left-hand lane, shifting down and riding the
guard rail to slow his rig as he traveled past the cars in the exit lane, and attempting
to take advantage of an opening between Jordan’s vehicle and the car in front of her
when the emergency lane merged into Jordan’s lane, rather than heading over the
embankment. Nevertheless, Moore hit Jordan’s car. 
          There is conflicting evidence, however, as to whether Moore’s actions prior
to his coming over the overpass demonstrated a failure to use ordinary care under the
circumstances. Jordan presented evidence that the collision occurred at rush hour and
that Moore was familiar with traffic on Loop 610, although he did not often take the
Wayside exit. Moore acknowledged that it would take at least 100 feet to stop his cab
at 40 miles per hour, and the record reflects that he received a citation for “failure to
control speed.” However, Moore was driving between 35-50 miles per hour, which
was well within the 40-55 mile per hour speed limit. There was no evidence that
traffic was bumper-to-bumper at any point other than in the exit lane on the blind side
of the overpass; rather, the evidence shows that the freeway was busy and that Moore
was traveling at the same speed as the car in front of him when both crested the
overpass. Moore testified that there was no warning, such as slowing vehicles or
brake lights coming on, to signal the stopped traffic over the overpass. Nor is there
any evidence that Moore was negligent in failing to keep a proper look-out prior to
the emergency. Rather, McGraw testified that Moore was driving carefully before the
accident and that neither Jordan nor Moore was at fault. Finally, the officer who saw
the accident and cited Moore for failing to control his speed testified that he did not
measure the skid marks or the point of impact of the vehicles and did not know what
distance separated Moore’s and Jordan’s vehicles; rather, the evidence of Moore’s
failure to control speed was “[t]he evidence of him striking the stopped vehicle.” 
Thus, there is at least a fact question as to whether Moore’s negligent acts before he
came over the overpass were a proximate cause of the collision.
          The inclusion of a sudden emergency instruction does not constitute error when
the evidence conflicts as to whether a driver’s actions before the emergency were
suspect. See Oldham, 864 S.W.2d at 127; DeLeon, 933 S.W.2d at 294. Rather, if
there is any support in the evidence for a sudden emergency instruction, the
instruction is properly given. Francis, 803 S.W.2d at 871. We conclude that there
was support in the evidence for the jury’s negative finding that Moore’s negligence 
was not a proximate cause of the collision.
          Jordan cites us to Priest v. Meyers, 598 S.W.2d 359, 363–64 (Tex.
App.—Houston [14th Dist] 1980, no writ), and Deviney v. McLendon, 496 S.W.2d
161, 166 (Tex. App.—Beaumont 1973, writ ref’d n.r.e.), as support for his contention
that the submitted instruction was improper because of Moore’s negligence prior to
the emergency. We find these cases factually distinguishable. In Priest, the driver
who struck the car directly in front of him was looking back over his shoulder at the
time of impact. 598 S.W.2d at 361. In Deviney, the driver was entering a freeway
ramp when he changed lanes and hit the car directly in front of him in the lane into
which he had he moved. 496 S.W.2d at 163. 
          In both Priest and Deviney, the evidence established that the drivers failed to
keep a proper lookout, and there was nothing to suggest that their forward view was
in any way obstructed. Here, in contrast, Moore had no visual cues to warn him that
he was about to encounter a line of stopped cars—he was cresting a blind overpass
and saw no brake lights as he did so. Nor does the evidence establish that he was
driving too fast or following too closely for the traffic conditions prior to his cresting
the hill. See DeLeon, 933 S.W.2d at 294 (concluding sudden emergency doctrine was
inapplicable in cases like Deviney and Priest where defendant’s deemed negligence
prior to emergency caused collision, but sudden emergency instruction was not error
where there was a fact issue as to defendant’s negligence in failing to maintain safe
distance prior to emergency). 
          In sum, we conclude there is evidence in the record from which the jury could
reasonably have inferred that the line of stopped cars on the blind side of the overpass
was sudden and unexpected, that Moore’s actions prior to the emergency were not a
proximate cause of the collision, that the emergency, to a reasonable person, would
have required immediate action without time for deliberation, and that Moore’s
actions after the emergency condition arose did not differ from those of a person of
ordinary prudence under the same or similar circumstances. 
          Accordingly, we conclude there was evidence of probative value to support
submission of the sudden emergency instruction to the jury. The trial court did not
err in submitting the instruction.
          We overrule Jordan’s second issue.
Improper Embellishment of Jury Charge
          In her third issue, Jordan contends Moore’s counsel improperly embellished
the court’s charge, resulting in a unjust verdict. In closing argument, Moore’s
counsel said to the jury:
The other thing that is really important here that applies in this case is
the last instruction that Judge Wise will give you about an emergency. 
It would not be permitted for me to talk about an emergency if it wasn’t
proper. The reason it is proper is because the fact situation is exactly
what we are talking about as motorists. This could apply to an accident
or any other type of emergency situation. He is confronted by an
emergency arising suddenly and unexpectedly. That is true. Absolutely,
it is true. He could not see what the traffic conditions were like over the
hill. And it wasn’t caused by anything that he did.

Jordan relies on Timberwalk Apartments v. Cain, 972 S.W.2d 749, 755 (Tex. 1998),
to support her argument that a party is not permitted to embellish or mischaracterize
the charge. In Timberwalk, however, counsel flagrantly misstated the court’s
instruction, and the appellant timely objected at trial. Id. Here, in contrast, counsel
emphasized the instruction, but did not misstate it, and Jordan did not object to
counsel’s closing argument. Thus, she has not preserved error in regard to this
comment. See Tex. R. App. P. 33.1.
          We overrule Jordan’s third issue.
Sufficiency of the Evidence
          In her sixth issue, Jordan contends the evidence was legally and factually
insufficient to sustain the jury’s answer to question one, “Did the negligence, if any,
of John D. Moore proximately cause the occurrence in question?” to which the jury
answered, “No.”
          Standard of Review
          Because Jordan attacks the legal and factual sufficiency of an adverse jury
finding on which she had the burden of proof, she must demonstrate that the evidence
conclusively establishes, as a matter of law, all facts in support of the issue (for
rendition), or, alternatively, that the jury’s adverse finding is against the great weight
and preponderance of the evidence (for remand). Vickery v. Vickery, 999 S.W.2d 342,
375 (Tex. 1999); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982). In reviewing a
claim that the evidence conclusively establishes liability as a matter of law, we
consider evidence and inferences supporting the jury’s finding and ignore all
evidence and inferences to the contrary. Havner v. E-Z Mart Stores, Inc., 825 S.W.2d
456, 458 (Tex. 1992); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989). In reviewing a claim that the verdict is against the great weight and
preponderance of the evidence, we consider and weigh all of the evidence and may
set aside the verdict only if the finding is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986). The jury may believe one witness and disbelieve
another, and it may resolve inconsistencies in any testimony. Eberle v. Adams, 73
S.W.3d 322, 327 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).
          Evidence Adduced at Trial
          The evidence and inferences supporting the jury’s finding that Moore was not
negligent consisted of (1) Moore’s testimony that he had no warning as he crested the
overpass about the line of cars stopped just over the overpass in the exit lane because
he could not see the other side of the hill and saw no brake lights; (2) Jesse McGraw’s
testimony confirming these assertions and McGraw’s expressed belief that neither
Moore nor Jordan was at fault in the accident and that Moore was driving carefully;
and (3) evidence that Moore was not speeding, and he was traveling at the same speed
as the general traffic before he crested the hill. This evidence is legally sufficient to
sustain the jury’s finding.
          Other evidence in the record included (1) the police officer’s conclusion that
Moore was following too closely and his citation of Moore for “failure to control
speed”; (2) Moore’s admission that it would take at least 100 feet to stop at 40 miles
per hour; and (3) Moore’s passing a number of cars before his truck hit Jordan’s
Expedition. Although this Court may have reached a different conclusion based on
all of the evidence, we cannot say that the jury’s finding was clearly wrong and
unjust. Accordingly, we hold that the evidence was factually sufficient to sustain the
verdict.
          We overrule Jordan’s sixth issue.
 
 
 
 
 
 
 
 
Conclusion
          Having held that the trial court did not abuse its discretion by submitting a
“sudden emergency” instruction to the jury, and that the evidence was legally and
factually sufficient to sustain the jury’s finding that Moore was not liable for the
accident, the remainder of Jordan’s issues regarding damages and negligent
entrustment are moot, and we decline to address them.
          We affirm the judgment of the trial court.
 
 
                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.