Howard **OLDHAM** and the City of Houston, Appellants,

v.

Sharon P. **THOMAS** and Alice McNeal, Appellees.

No. C14–92–00738–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 23, 1993.

Rehearing Denied Nov. 10, 1993.

Patricia L. Hayden, Houston, Cary L. Bovey, Austin, for appellants.

James H. Brannon, Houston, for appellees.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

ROBERTSON, Justice.

Howard Oldham and the City of Houston appeal from an adverse judgment holding them jointly and severally liable for the property damages and part of the personal injury damages and holding Oldham individually liable for the remaining damages. Appellants raise twelve points of error. Because we hold that the judgment against the City bars the action against Oldham individually, we modify the judgment such that appellants take nothing from Oldham individually. Ex-cept as so modified, we affirm the remainder of the judgment.

Appellant, Howard Oldham, is a Houston police officer. On January 10, 1988, Oldham struck the rear of a car driven by appellee, Sharon Thomas. This collision caused damage to the vehicle, owned by appellee, Alice McNeal, and caused injuries to Thomas' neck requiring surgery. Appellees sued appellants for negligence seeking personal injury damages of $250,000.00 and property damages of $4,269.06.

The case was tried to a jury which found Oldham negligent and awarded McNeal $3,300.00 for damage to her vehicle and awarded Thomas $500,000.00 for her personal injuries. Because appellees had pled damages of only $250,000.00, the trial court allowed appellees to file a trial amendment to the petition to plead for $500,000.00 in damages. The trial court then entered judgment holding appellants jointly and severally liable to Thomas for $250,000.00, holding appellants jointly and severally liable to McNeal for $4,416.80, and holding Oldham individually liable to Thomas for $429,508.20.

In point of error one, appellants contend the trial court erred in assessing judgment of $429,508.20 against Oldham individually because the award is barred by § 101.106 of the Texas Tort Claims Act. Section 101.106 provides:

A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

Tex.Civ.Prac. & Rem.Code Ann. § 101.106 (Vernon 1986).

Appellants contend that the judgment rendered against both appellants barred the concurrent judgment against Oldham individually. Appellees counter that § 101.106 bars an action against a governmental employee only if there is a prior, not concurrent, judgment against the governmental entity. In support of this proposition, appellees cite *Madisonville Indep. School Dist. v. Kyle*, 658 S.W.2d 149 (Tex.1983), *City of Bedford v. Schattman*, 776 S.W.2d 812 (Tex.App.—Fort

Worth 1989, no writ), and *Steele v. Barbian*, 620 S.W.2d 875 (Tex.Civ.App.—Amarillo 1981, no writ).

*Kyle* was a wrongful death suit filed by the parents of a child killed after exiting a school bus. 658 S.W.2d at 150. The defendants included the school district, the bus driver, and the owner and driver of the car that struck the child. *Id.* The trial court rendered judgment in favor of the plaintiffs. *Id.* The court of appeals affirmed in part and reversed in part, holding that Texas law did not allow certain damages in a wrongful death suit. *Id.* The supreme court reversed and reinstated the trial court's judgment with some modification of the damages. *Id.* The parties did not raise § 101.106 as a bar to the action against the bus driver and the court did not mention that statute.

*Schattman* was a mandamus action requiring the court to determine two issues: (1) whether a cause of action against a city employee for acts in the course and scope of his employment was an action under the Tort Claims Act, and (2) whether the existence, nature, and extent of insurance coverage the City may have provided for the city employee was discoverable from the employee. 776 S.W.2d at 812. The City had tendered $250,-000.00 into the registry of the court, which was the limitation of its liability under the Tort Claims Act. *Id.* at 813. The court noted that settlement with the City would release the city employee under § 101.106. *Id.* The court reasoned that the plaintiffs could not settle with the City until they knew whether the employee had any coverage. *Id.* If the employee had no coverage, the plaintiffs would most likely settle with the City, and thereby release the employee. *See id.* The court found that the suit against the employee was not a suit brought under the Tort Claims Act and therefore, plaintiffs could discover information about the employee's insurance coverage. *Id.* at 814.

Appellees contend this case supports their argument that a concurrent judgment does not bar the suit against the employee because, if it did bar the suit, the *Schattman* court would not have needed to address discoverability of insurance coverage. Even so, the court did not address the question wheth-er a concurrent judgment in the case would bar the suit against the employee. Therefore, we cannot determine whether the court even considered this possibility in reaching their conclusion. Thus, we do not find this case persuasive.

In *Steele*, the trial court granted the motion for summary judgment of the City of Amarillo on the ground of governmental immunity. 620 S.W.2d at 876. The plaintiffs did not institute suit against the governmental employee until after the judgment in favor of the City became final. *Id.* The employee filed a motion for summary judgment on the grounds of governmental immunity, res judicata, collateral estoppel, and estoppel by judgment. *Id.* at 876–77. The latter three grounds were based on § 12 (now § 101.106) of the Texas Tort Claims Act. *Id.* at 877. The trial court granted the employee's motion for summary judgment and the appellate court affirmed this judgment, finding that the prior action against the City was founded on the same subject matter as the present suit against the employee. *Id.* Thus, the court held that § 12 (now § 101.-106) barred the action against the employee. *Id.*

*Steele* stands for the proposition that § 101.106 bars a subsequent action against a governmental employee, but it does not address a concurrent judgment against the governmental unit and its employee. Because *Steele* does not address concurrent judgments, we cannot interpret it to hold that § 101.106 does not bar a concurrent judgment against a governmental employee.

In support of their interpretation of section 101.106, appellants cite *LeLeaux v. Hamshire–Fannett Indep. School Dist.*, 798 S.W.2d 20 (Tex.App.—Beaumont 1990), *aff'd on other grounds*, 835 S.W.2d 49 (Tex.1992). In *LeLeaux*, the plaintiff filed a negligence personal injury suit against a school district and a bus driver employed by the district. 798 S.W.2d at 21. The trial court granted summary judgment in favor of the district and granted summary judgment in favor of the driver. *Id.* at 22. The appellate court affirmed the summary judgment in favor of the district by finding that the accident did not arise out of the "operation or use" of the

school bus. *Id.* at 23. Having affirmed the judgment in favor of the district, the appellate court affirmed the summary judgment in favor of the driver on the ground that the judgment in favor of the district barred the action against the driver under § 101.106. *Id.* The supreme court affirmed the court of appeals' judgment as to the summary judgment in favor of the district. 835 S.W.2d at 52. The supreme court also affirmed the summary judgment in favor of the bus driver, but on different grounds than those used by the court of appeals. *Id.* at 52–53. The supreme court did not mention § 101.106.

Appellees argue that we should not rely on the court of appeals' holding in *LeLeaux* because the supreme court affirmed on other grounds. The supreme court, however, did not expressly disapprove of the intermediate court's holding as to the statutory bar. Thus, we may rely on the holding of the court of appeals. *LeLeaux* is the only case involving concurrent judgments and the court of appeals held that, under § 101.106, the judgment against the governmental unit barred the action against the employee. 798 S.W.2d at 23. We believe this holding comports with the plain language of the statute. The statute does not say that a judgment constitutes a bar to any *subsequent* action against the employee of the governmental unit. The statute says that a judgment constitutes a bar to *any* action against the employee. Thus, we agree with the court of appeals' holding in *LeLeaux* and hold that the judgment against the City in this case bars the action against appellant Oldham. We sustain point of error one.

In points of error two through seven, appellants challenge the submission of question 4 regarding McNeal's damages and challenging the sufficiency of the evidence supporting the jury's award to McNeal. Appellants also claim the trial court erred in denying a motion for directed verdict and a motion for judgment n.o.v. as to McNeal's damages. McNeal received an award of $3,300.00 for damage to her vehicle.

▆▆ The grant of a directed verdict is proper when: (1) there is a defect in the opponent's pleadings making them insufficient to support a judgment; (2) the evidence conclusively proves a fact establishing a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise a fact issue. *Edlund v. Bounds*, 842 S.W.2d 719, 723–24 (Tex.App.—Dallas 1992, writ denied). A trial court properly grants a motion for judgment n.o.v. only when there is no evidence upon which the jury could have made its findings. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990). In reviewing a claim of "no evidence," we must consider only the evidence and inferences that tend to support the finding and if any evidence of probative force tends to support the finding, the finding must be upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). In reviewing a claim that the evidence is factually insufficient to support a jury finding, we must consider all of the evidence and determine whether the evidence against the jury's finding is so great as to make the finding erroneous. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex.App.—Amarillo 1988, writ denied).

▆▆ The proper measure of damages for destroyed property is its reasonable market value at the time of destruction. *Hartford Ins. Co. v. Jiminez*, 814 S.W.2d 551, 552 (Tex.Civ.App.—Houston [1st Dist.] 1991, no writ); *Bass v. McClung Roofing Co., Inc.*, 575 S.W.2d 342, 344 (Tex.Civ.App.—Fort Worth 1978, no writ). An owner can testify to the market value of his property even if he could not testify to the value of like property belonging to someone else. *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex.1984). The owner will qualify as a witness to the damages to his property only if his testimony shows that it refers to market rather than intrinsic or some other value of the property. *Id.* at 505. This requirement is usually met by asking the witness if he is familiar with the market value of his property. *Id.*

▆▆ McNeal, the owner of the vehicle, testified that the car was a 1984 Pontiac 1000. The only testimony as to value is as follows:

Q Okay. Was the car ever repaired?

A No, it wasn't. To my knowledge it wasn't.

Q   What was the value of the car?

A   About 3,250.

Although appellees' counsel did not ask McNeal if she was familiar with the "market" value of her vehicle, neither the question nor the answer indicate that McNeal was testifying to the intrinsic or other value of the vehicle. Thus, we find that this testimony was sufficient evidence of the market value and we overrule points of error two through seven.

■ In points of error eight through eleven, appellants also challenge the award of damages to appellee Thomas for her personal injuries. In jury question three, the jury was given an instruction regarding the elements of damages to consider. These elements included physical pain and mental anguish, loss of earning capacity, disfigurement, physical impairment, and medical care. The jury then was asked to give a total amount of damages. The jury wrote in the blank provided for their answer, $500,000.00 as the total award. The jury also, however, wrote in amounts next to each element listed in the instruction. These individual amounts add up to the total sum awarded. Because the jury noted these individual amounts, appellants challenges the sufficiency of the evidence supporting the awards for medical care and for loss of earning capacity.

■ In addressing similar situations involving handwritten notations by the jury on separate elements of damages, the courts have held that such notations do not constitute conclusive proof as to how the jury arrived at its total damages answer. *Mills v. Jackson*, 711 S.W.2d 427, 429 (Tex.App.— Fort Worth 1986, no writ); *Richardson v. Walters*, 311 S.W.2d 268, 270 (Tex.Civ.App.— Fort Worth 1958, no writ). These handwritten notations represent, at most, the "mental process" by which the jury reached its verdict. *Mills*, 711 S.W.2d at 430. The jury's reasons for reaching a particular verdict, as indicated by the jury in handwritten notations, are irrelevant and cannot be considered on appeal. *See City of Waco v. Hester*, 805 S.W.2d 807, 817 (Tex.App.—Waco 1990, writ denied); *Mills*, 711 S.W.2d at 430. Con-

sequently, we overrule points of error eight through eleven.

■ In point of error twelve, appellants claims the trial court erred in refusing to include appellants' instruction on "sudden emergency" in the court's charge. A trial court has considerable discretion in submitting instructions and definitions. *See Harris v. Harris*, 765 S.W.2d 798, 801 (Tex.App.— Houston [14th Dist.] 1989, writ denied). When a court refuses to submit a requested instruction, the question on appeal is whether the instruction was reasonably necessary to enable the jury to render a proper verdict. TEX.R.CIV.P. 277. Whether the court's refusal to submit the requested instruction requires reversal is determined by applying the harmless error rule. *See St. James Transp. Co. v. Porter*, 840 S.W.2d 658, 664 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

■ Appellants contend there was some evidence that Oldham was confronted with a sudden and unexpected condition when Thomas began to make a U-turn.

The necessary elements of sudden emergency are:

(1) the condition must have arisen suddenly;

(2) it must have arisen unexpectedly;

(3) it must not have been proximately caused by the negligent act or omission of the person whose conduct is being inquired about; and

(4) the conduct which would constitute negligence under ordinary circumstances must have occurred after the emergency arose without giving the person time to deliberate.

*Mid–Tex Dev. Co. v. McJunkin*, 369 S.W.2d 788, 792 (Tex.Civ.App.—Dallas 1963, no writ). If the party attempting to invoke the doctrine is negligent before the emergency arises, the doctrine is not applicable because it cannot be used by a person whose negligence helped create the situation. *Higginbotham v. Ritchie*, 367 S.W.2d 210, 212 (Tex.Civ.App.—Fort Worth 1963, no writ).

■ The evidence indicated that Thomas was making a U-turn at an intersection at

the time of collision. Witnesses to the collision testified that Oldham did not have his headlights on and one witness estimated that Oldham was going 50–55 miles per hour at the time his vehicle impacted the rear of the vehicle driven by Thomas. Two witnesses testified that Oldham's vehicle skidded before the collision. The police officer who investigated the collision observed 63 feet of skid marks before impact and 5 feet of skid marks after impact. According to test results and calculations based on the length of the skid marks, the investigator testified first that Oldham's minimum speed at impact was 37.6 miles per hour. This investigator later changed his testimony to state that the 37.6 mile per hour speed was Oldham's speed before he applied the brakes. Despite this variation in testimony, the investigator agreed that Oldham's vehicle was going faster than 37.6 miles per hour based on the damage caused to the vehicles. Oldham testified that his headlights were on and that he recalled his maximum speed before the collision to be 35 miles per hour. According to the accident report, the speed limit was 35 miles per hour. Oldham also testified that he could see the intersection when he was approximately a block or a block and a half away from it. He added that Thomas did not begin to make the U-turn until Oldham was 2–3 car lengths from her vehicle.

■ Because the evidence is conflicting on the issue whether Oldham's actions before the alleged "emergency" arose constituted negligence, the trial court should have submitted the requested instruction on sudden emergency. Nevertheless, having reviewed the entire record, we do not find that the court's refusal to submit this instruction amounted to such a denial of Oldham's rights as to have caused the rendition of an improper judgment. Therefore, we overrule point of error twelve.

Having determined that the judgment against the City bars the action against Oldham, we reverse that portion of the judgment that orders recovery from Oldham individually the sum of $429,508.20 and we modify the judgment to reflect that appellants take nothing from Oldham individually. Except as so modified, we affirm the remainder of the judgment.

BOWERS, J., not participating.