Opinion issued April 12, 2007

 









In The

Court of Appeals

For The

First District of Texas






NO. 01-03-00554-CV






MAETHENIA JORDAN, Appellant


V.


SAVA, INC. AND JOHN D. MOORE, Appellees






On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 2000-52097






OPINION ON REHEARING


 On December 14, 2006 we issued an opinion on rehearing that granted the
motion for rehearing of our opinion of May 19, 2005, filed by appellant, Maethenia
Jordan. See Tex. R. App. P. 49.7. (1) A dissenting opinion was also issued on December
14, 2006. Appellees, Sava, Inc. and John D. Moore, filed a response to the motion
for rehearing. On January 5, 2007, we sua sponte withdrew the December 14, 2006
opinion on rehearing, dissenting opinion, and accompanying judgment to consider
this case in light of Bed, Bath & Beyond, Inc. v. Urista, which was recently decided
by the Texas Supreme Court. See 211 S.W.3d 753 (Tex. 2006). We now deny the
motion for rehearing, withdraw our opinion and judgment of May 19, 2005, and issue
this opinion on rehearing and accompanying judgment in their stead. 

 Appellant, Maethenia Jordan, appeals a take-nothing judgment rendered in her
personal injury suit against appellees, Sava, Inc. and John D. Moore. In seven issues,
Jordan contends (1) the trial court erred in denying her challenges for cause of two
jurors who admitted bias; (2) everyday rush-hour traffic in Houston does not
constitute a "sudden emergency" justifying a jury instruction; (3) Moore's and Sava,
Inc.'s counsel improperly embellished and mischaracterized the court's charge; (4)
an "eggshell skull" instruction should have been given to the jury; (5) the trial court
should not have rendered a directed verdict for Sava, Inc.; (6) the jury's answer to
question one, regarding Moore's liability, was wrong as a matter of law and was
against the great weight and preponderance of the evidence; and (7) the jury's answer
to question two, regarding damages, was against the great weight and preponderance
of the evidence. 

 We affirm.Facts

 On September 20, 1999, Moore was driving a tractor-trailer rig, minus the
trailer, on Loop 610 North in Houston. The speed limits were a minimum of 40 and
a maximum of 55 mph; Moore's speed was approximately 45 mph. (2) As Moore
crested a hill just before the Wayside exit, he came upon a motionless line of cars in
the same lane waiting to exit. The car directly in front of Moore swerved into the left
lane; Moore swerved into the emergency lane to the right of the exit lane. Moore
shifted down and intentionally "rode the guardrail" as he proceeded, to augment his
attempt to bring the rig to a stop, but he drove over some grass on the side of the road
that caused the rig to skid slightly. Moore passed as many as eight to 15 cars before
the emergency lane merged into the exit lane and ended. To the right of the
emergency lane was a drop-off over an embankment. When Moore realized he was
running out of room as the emergency lane merged with Jordan's lane, Moore
thought he could steer through an opening of 10 to 12 feet between Jordan's Ford
Expedition and the car behind it. Instead, his tractor-trailer cab collided with the rear
end of Jordan's Expedition, spinning the Expedition 180 degrees before traveling
across the freeway and coming to rest against the divider between the oncoming lanes
of traffic. (3)

 Moore and his front-seat passenger, Jesse McGraw, an emergency medical
technician (EMT), checked on Jordan and her passenger and called Emergency
Medical Services (EMS). Jordan was taken to a local hospital by ambulance. She
had injured her back, resulting in a number of physical and practical impairments to
her life. A police officer who happened to be traveling along this route stopped to
investigate the accident. He issued Moore a citation for "failure to control speed,"
but did not cite him for speeding.

 Jordan sued Moore for negligence and sued the company that owned the
tractor-trailer, Sava, Inc., for, among other causes of action, negligent entrustment
under the doctrine of respondeat superior. After a jury trial in which the jury
determined that Moore was not liable, the trial court rendered a take-nothing
judgment for Jordan with prejudice.

Challenges to Venire Members


 In her first issue, Jordan contends the trial court erred by denying her
challenges for cause to two jurors who she contends were biased in favor of Moore,
thereby forcing her to use peremptory strikes on these jurors instead of on two other 
jurors whom she found objectionable.

 Standard of Review

 A person is disqualified to serve as a petit juror if he has a prejudice for or
against a party in the case. Tex. Gov't Code Ann. § 62.105(4) (Vernon 2005). A
person may be disqualified if the prejudice extends to the subject matter of the
litigation, including damages for pain and suffering. See Compton v. Henrie, 364
S.W.2d 179, 182 (Tex. 1963); see also Houghton v. Port Terminal R.R. Ass'n, 999
S.W.2d 39, 45-46 (Tex. App.--Houston [14th Dist.] 1999, no pet.). We review a
trial court's decision to disqualify a panel member under an abuse of discretion
standard. Buls v. Fuselier, 55 S.W.3d 204, 210 (Tex. App.--Texarkana 2001, no
pet.). A trial court abuses its discretion in refusing to disqualify a venire member
only if the record shows that the venire member was not able or willing to set aside
personal beliefs to act impartially. Id. at 210. A trial court's overruling a challenge
for cause carries with it an implied finding that bias does not exist to the degree that
it constitutes disqualification. Id. at 209-10. Thus, when the evidence does not
conclusively establish a venire member's disqualification, we consider the evidence
in the light most favorable to the trial court's ruling. Id. at 210.


 Venire Member Number 17 

 During voir dire, venire member 17 expressed reservations about awarding a
plaintiff damages for pain and suffering. The following colloquy took place:

 [Counsel]: [I]n terms of an award above and beyond just medical bills,
whether they have seen a doctor or not, would you have a
hard time doing that?


 [No. 17]: Yes.


 [Counsel]: [G]iven that you feel that way . . . do you think you could
be an impartial juror, given the fact that you have those
beliefs when at the end of this trial you will be
asked--there will be a blank for pain and suffering and
mental anguish.


 [No. 17]: That is pretty tough. I haven't heard the case yet. Yes, I
think I would have trouble. Would it affect me? Yes,
because that is just the way I believe. That is the way I
would feel.


 Shortly thereafter, the trial court individually questioned this venire member,
as follows:

 [Court]: I think what we are dealing with here is the law allows the
prevailing party who has suffered a personal injury in a
proper case to recover their medical bills from a party that
caused them that injury if certain findings are made. 
Assuming all of that, what he is asking you about is one of
the things that the law allows you to recover. You can
recover your medical bills, you can recover lost wages if
you miss work because you were laid up. But if you suffer
pain, the law allows you to be compensated in the proper
case. If you have suffered mental anguish, the law allows
you to be compensated for that in the proper case. The
question is: can you award that in the proper case or can
you sit here and say, I believe in awarding A, B, and C, but
I don't believe in D?


 [No. 17]: I think I would follow the instructions. Would it be real
difficult for me to say, yes, I believe someone needs money
for pain and suffering? Probably that would be a difficult
thing. I am a pretty reasonable person. I just . . .


 [Counsel]: There is nothing wrong with that.


 [No. 17]: It is just really I can see the wages and all that stuff. I have
dealt with my father who was a doctor. It seems like
sometimes people are just getting a little out of hand with
prices and that is one area that I can see would get out of
hand because there is no way to measure it.


 [Counsel]: Are you going to penalize Ms. Jordan for it?


 [No. 17]: No, I won't penalize her.


After the trial court denied Jordan's challenge for cause, Jordan used a peremptory
strike to exclude venire member 17 from the jury. 

 Venire member 17's replies to the trial court's inquiries do not demonstrate that
she would not have been able to set aside her personal beliefs to act impartially, thus
penalizing Jordan. Accordingly, the trial court did not abuse its discretion in denying
the challenge for cause to venire member 17. See Buls, 55 S.W.3d at 210 (holding
that, trial court abuses discretion in refusing to disqualify only when record shows
venire member unable or unwilling to act impartially); see also Sosa v. Cardenas, 20
S.W.3d 8, 11-13 (Tex. App.--San Antonio 2000, no pet.) (affirming trial court's
denial of challenges for cause of several jurors who indicated bias against awarding
damages for mental anguish, but agreed it would depend on evidence presented, and
jurors did not indicate they would not follow court's instructions).

 Venire Member Number 20

 In regard to venire member 20, there was little in the record to reflect her
alleged bias. The following colloquy is the only one that occurred:

 [Counsel]: You raised your hand.

 [No. 20]: I think everybody suffers on a daily basis on pain and they
don't get compensation.


 [Counsel]: What if you had severe pain that prevented you from going
to work?


 [No. 20]: Well, you have your medical and everything is paid for. 
Pain and suffering, somebody is giving you something for
pain and suffering, and therapy. Not really. I don't think
that pain and suffering would be something that you would
get unless it was a child or grandma or somebody that was
with you and it is there, really.


This answer does not sufficiently demonstrate a degree of bias that would lead us to
conclude that the trial court abused its discretion in denying Jordan's challenge for
cause of venire member 20. See Kiefer v. Continental Airlines, Inc., 10 S.W.3d 34,
39 (Tex. App.--Houston [14th Dist.] 1999, pet. denied) (holding trial court did not
err in denying challenge for cause to juror who said he would have a "difficult time"
awarding damages for pain and suffering). Jordan did not ask additional questions
of this venire member or attempt to rehabilitate her in any way. 

 Although Jordan suggests in her reply brief that she had no obligation to
investigate further, that position is not supported by applicable case law, because bias
is not presumed in regard to a venire member's answers during voir dire; rather, it
must be proved. Buls, 55 S.W.3d at 210. Nor is bias shown based on answers to
general questions, because such questions are usually insufficient to provide the
diligence required to probe a venire member's mind. Id. Jordan bore the burden of
showing that venire member 20's state of mind would naturally lead to the inference
that she could not act impartially. See id. at 209. Because she did not satisfy this
burden, we hold that the trial court did not err in denying the challenge for cause to
venire member 20.

 We overrule Jordan's first issue.

"Sudden Emergency" Instruction in Jury Charge


 In her second issue, Jordan contends the trial court erred in submitting a
"sudden emergency" instruction to the jury over her objection.

 Standard of Review

 A sudden emergency instruction advises the jurors that if the evidence shows
that conditions beyond the party's control caused the accident in question or that the
conduct of some person not a party to the litigation caused it, the jury does not have
to place blame on a party. See Dillard v. Tex. Elec. Coop., 157 S.W.3d 429, 432
(Tex. 2005). The purpose of the instruction is to advise the jurors, in an appropriate
case, "that they do not have to place blame on a party to the suit if the evidence shows
that conditions beyond the party's control caused the accident in question." Id. 

 For an instruction on sudden emergency to be proper, the evidence must
support the elements of the sudden emergency defense, i.e., that (1) an emergency
situation arose suddenly and unexpectedly; (2) the emergency situation was not
proximately caused by the negligent act or omission of the person whose conduct is
under inquiry; and (3) after an emergency situation arose that to a reasonable person
would have required immediate action without time for deliberation, the person acted
as a person of ordinary prudence would have acted under the same or similar
circumstances. See Thomas v. Oldham, 895 S.W.2d 352, 360 (Tex. 1995); Evans v.
Allwhite, 111 S.W.3d 282, 286 (Tex. App.--Texarkana 2003, no pet.); Priest v.
Myers, 598 S.W.2d 359, 363 (Tex. App.--Houston [14th Dist.] 1980, no writ); see
also Dillard, 157 S.W.3d at 432 n.4. 

 If there is conflicting evidence regarding whether there was a sudden
emergency, the trial court should submit the requested instruction. Oldham v.
Thomas, 864 S.W.2d 121, 127 (Tex. App.--Houston [14th Dist.] 1993), rev'd in part
on other grounds, 895 S.W.2d 352 (Tex. 1995). Indeed, if there is any support in the
evidence for a sudden emergency instruction, the instruction is properly given. 
Louisiana-Pacific Corp. v. Knighten, 976 S.W.2d 674, 676 (Tex. 1998); Francis v.
Cogdell, 803 S.W.2d 868, 871 (Tex. App.--Houston [1st Dist.] 1991, no writ); see
also Reinhart v. Young, 906 S.W.2d 471, 474 (Tex. 1995). A trial court has "great
latitude" in determining its instructions to the jury. Knighten, 976 S.W.2d at 676;
Evans, 111 S.W.3d at 284; Francis, 803 S.W.2d at 871; see also Dillard, 157 S.W.3d
at 432-34 (discussing overlapping nature of inferential rebuttal instructions used
when defendants blame occurrence on something or someone other than themselves). 
Thus, if a doctrine has been pleaded, and there is some evidence of probative value
to support its application, the trial court has a duty to instruct the jury to assist it in
reaching its verdict. DeLeon v. Pickens, 933 S.W.2d 286, 290 (Tex. App.--Corpus
Christi 1996, writ denied); see Charter Oak Fire Ins. Co. v. Taylor, 658 S.W.2d 227,
229 (Tex. App.--Houston [1st Dist.] 1983, no writ). 

 On appeal, the reviewing court must examine the pleadings, the evidence
presented, and the jury charge; any error regarding a requested instruction will not be
deemed reversible unless it "was reasonably calculated to cause and probably did
cause rendition of an improper judgment." DeLeon, 933 S.W.2d at 290-91; see
Knighten, 976 S.W.2d at 676.

 Evidence of Sudden Emergency

 The sudden emergency instruction submitted to the jury stated,

 "Emergency" means if a person is confronted by an "emergency"
arising suddenly and unexpectedly, which was not proximately
caused by any negligence on his part and which, to a reasonable
person, requires immediate action without time for deliberation,
his conduct in such an emergency is not negligence or failure to
use ordinary care if, after such emergency arises, he acts as a
person of ordinary prudence would have acted under the same or
similar circumstances.


The instruction was in the form approved by the Texas Supreme Court. See Thomas,
895 S.W.2d at 360.

 For an instruction on sudden emergency to be proper, the evidence must
demonstrate the elements of a sudden emergency: (1) the emergency condition arose
suddenly and unexpectedly; (2) the condition was not proximately caused by the
negligent act or omission of the person whose conduct is under inquiry; and (3) after
a condition arose that to a reasonable person would have required immediate action
without time for deliberation, the person acted as a person of ordinary prudence
would have acted under the same or similar circumstances. See Thomas, 895 S.W.2d
at 360; Evans, 111 S.W.3d at 286; Priest, 598 S.W.2d at 363. To determine whether
a sudden emergency instruction was proper in this case, we must determine whether
the evidence raised a fact issue as to each of the elements of sudden emergency.

 Sudden and Unexpected Condition

 A number of courts have submitted a sudden emergency instruction when an
act of nature was a factor in a collision. See Knighten, 976 S.W.2d at 676 (sudden
emergency instruction did not cause rendition of improper judgment when defendant
struck plaintiff from behind after plaintiff abruptly applied her brakes on wet street
in rain); Francis, 803 S.W.2d at 871 (testimony that rear-end collision was caused by
plaintiff suddenly slamming on brakes at yellow light during morning rush hour in
rain on wet and slick roads supported trial court's instruction on sudden emergency);
Crowley v. Babolcsay, 611 S.W.2d 492, 494 (Tex. App.--Austin 1981, writ ref'd
n.r.e.) (sudden emergency instruction was warranted when evidence showed
defendant swerved into wrong side of the road to pass car in front of him, leading to
head-on collision with plaintiff on top of "blind" hill on rainy afternoon).

 However, an act of nature is not a necessary prerequisite for a sudden
emergency. Actions by other vehicles can cause a sudden emergency. See DeLeon,
933 S.W.2d at 288, 294 ("emergency" arose after truck darted across four lanes from
a private driveway causing actions resulting in collision). Moreover, even in cases
involving acts of nature, the emergency condition is not said to be the act of nature,
but rather the driver's encountering another vehicle under sudden and unexpected
circumstances not created by his own wrongful actions, whether it is a stopped car,
a car slowing down, or an oncoming car in the same lane of traffic. See Reinhart, 906
S.W.2d at 474 (finding no error in submission of both "unavoidable accident"
instruction and sudden emergency instruction when driver rear-ended car stopped on
blind side of overpass); (4) Bounds v. Scurlock Oil Co., 730 S.W.2d 68, 71 (Tex.
App.--Corpus Christi 1987, writ ref'd n.r.e.) (holding sudden emergency instruction
not error when driver who struck car on shoulder was traveling around curve just
before accident and had been "blinded" by headlights of oncoming car). Similarly,
the "sudden emergency" here was Moore's coming upon stopped or slow-moving
vehicles on the blind side of an overpass on a freeway. 

 Jordan characterizes the road conditions as being standard rush-hour, bumper-to-bumper traffic, implying that stoppages on the freeway were to be expected. A
sudden stoppage on a freeway or any road is always a possibility regardless of the
amount of congestion on the road, the time of day, or the type of traffic for many
different reasons, such as broken down cars, traffic accidents, and traffic congestion. 
But the issue here is not the possibility of these occurrences, but rather the
expectation of these occurrences. (5) We note, in this regard, that, other than references
at different points during trial that the accident occurred in the afternoon or in the
evening, the exact time of the accident is not specified, except by Jordan, who stated
that it was "somewhere between five and six," implying that congestion should have
been anticipated. Jordan also testified, however, that the traffic was "busy going both
directions." Nor is there any evidence to show that traffic in lanes other than the exit
lane to Wayside, on the far side of the overpass, was bumper-to-bumper. (6) Rather,
Moore stated that he was traveling the same speed as the car directly in front of him
when he crested the overpass. 

 Moore testified that he saw neither stopped vehicles nor vehicles that were
slowing down ahead of him before he came down the blind side of the overpass. He
also testified that he saw no brake lights from vehicles ahead of him that would
indicate heavy traffic or vehicles that were slowing down or stopping entirely. Nor
did he see any indication of congestion prior to encountering the emergency, as any
congestion that existed was on the blind side of the overpass. Moore could not have
known what the cars on the blind side of an overpass were doing unless there was
some indication by cars in front of him slowing down before he himself drove over
the overpass. 

 We hold that there is evidence from which the jury could have concluded that
the emergency condition arose suddenly and unexpectedly. We further hold that it
is a question of fact for the jury to decide whether it is reasonable for a driver to
expect that traffic will be at a standstill on the blind side of an overpass under the
conditions present when there is no prior indication of that standstill. 


 Pre-Collision and Post-Collision Negligence and Proximate Cause

 The sudden emergency doctrine is applicable in cases involving rear-end
collisions when the defendant's negligent actions are a result of emergency
conditions, but not when the defendant's actions prior to the emergency are negligent. 
See, e.g., DeLeon, 933 S.W.2d at 294; Oldham, 864 S.W.2d at 126-27. In short, the
evidence must be such that the jury could find that the collision was not proximately
caused by the defendant's own pre-emergency negligence. 

 Here, the jury was instructed on negligence and proximate cause as follows:

 "Negligence," means failure to use ordinary care, that is, failing
to do that which a person of ordinary prudence would have done
under the same or similar circumstances or doing that which a
person of ordinary prudence would not have done under the same
or similar circumstances.


 "Ordinary care" means that degree of care that would be used by
a person of ordinary prudence under the same or similar
circumstances.


 "Proximate cause" means that cause which, in a natural and
continuous sequence, produces an event, and without which cause
such event would not have occurred. In order to be a proximate
cause, the act or omission complained of must be such that a
person using ordinary care would have foreseen that the event,
or some similar event, might reasonably result therefrom.


 There may be more than one proximate cause of an event, but if
an act or omission of any person not a party to the suit was the
"sole proximate cause" of an occurrence, then no act or omission
of any other person could have been a proximate cause.


The charge follows the Texas Pattern Jury Charges on negligence, proximate cause,
and sole proximate cause. See Comm. on Pattern Jury Charges, State Bar of
Tex., Texas Pattern Jury Charges PJC 2.1, 2.4, 3.2 (2003). Jury Question 1
asked whether appellant's negligence proximately caused "the occurrence in
question." The jury responded, "No." We must determine, therefore, whether the
jury's negative answer has support in the record.

 While the law provides that a motorist driving behind another vehicle must
drive at a reasonable speed, keep back a reasonable distance, and keep his vehicle
under reasonable control to provide for the contingency that a vehicle in front may
suddenly stop, the mere occurrence of a rear-end collision does not establish
negligence as a matter of law. DeLeon, 933 S.W.2d at 289. Rather, whether a rear-end collision raises an issue of negligence or establishes negligence as a matter of law
depends on all the facts and circumstances of the case. Id. 

 The undisputed evidence establishes that Moore acted after the emergency
arose as a person of ordinary prudence would have acted under the same or similar
circumstances. Moore and McGraw both testified that the line of stopped cars was
so close when Jordan crested the hill that evasive action was necessary. Jordan
likewise admitted that evasive action to avoid a collision is necessary when a driver
comes over an overpass and finds traffic stopped in his lane. The undisputed
evidence establishes that when Moore came over the overpass in the exit lane and saw
the stopped cars directly in front of him, he immediately took the necessary evasive
action--swerving to the right into the emergency lane to avoid hitting the stopped
cars in front of him or the traffic in the left-hand lane, shifting down and riding the
guard rail to slow his rig as he traveled past the cars in the exit lane, and attempting
to take advantage of an opening between Jordan's vehicle and the car in front of her
when the emergency lane merged into Jordan's lane, rather than heading over the
embankment. Nevertheless, Moore hit Jordan's car. 

 There is conflicting evidence, however, as to whether Moore's actions prior
to his coming over the overpass demonstrated a failure to use ordinary care under the
circumstances. Jordan presented evidence that the collision occurred at rush hour and
that Moore was familiar with traffic on Loop 610, although he did not often take the
Wayside exit. Moore acknowledged that it would take at least 100 feet to stop his cab
at 40 mph, and the record reflects that he received a citation for "failure to control
speed." Moore testified that he was not following the car in front of him at a "safe
following distance." Moore also stated that he would have run over the car in front
of him "[b]ecause I was following too close, probably, and I wasn't--I would not
have been able to stop as fast as he would." Moore's opinion, however, is not
conclusive on the issue of whether he was following too closely. Here, as in Deviney
v. McLendon, "defendant's estimates of speed, distance, etc., . . . were no more than
his opinions." 496 S.W.2d 161, 164 (Tex. App.--Beaumont 1973, writ ref'd n.r.e.). 
"The rule is settled that a party is not necessarily bound to a fact which he admits only
by way of opinion." Id. 

 Although Moore's opinion is some evidence of his distance, other evidence
suggests that he was not following too closely or speeding. Moore was driving
between 35-50 mph, which was well within the 40-55 mph speed limit. There was
no evidence that traffic was bumper-to-bumper at any point other than in the exit lane
on the blind side of the overpass; rather, the evidence shows that the freeway was
busy and that Moore was traveling at the same speed as the car in front of him when
both crested the overpass. Moore testified that there was no warning, such as slowing
vehicles or brake lights coming on, to signal the stopped traffic over the overpass. 
Nor is there any evidence that Moore was negligent in failing to keep a proper look-out prior to the emergency. Rather, McGraw testified that Moore was driving
carefully before the accident and that neither Jordan nor Moore was at fault. Finally,
the officer who saw the accident and cited Moore for failing to control his speed
testified that he did not measure the skid marks or the point of impact of the vehicles
and did not know what distance separated Moore's and Jordan's vehicles; rather, the
evidence of Moore's failure to control speed was "[t]he evidence of him striking the
stopped vehicle." Thus, there is a fact question as to whether Moore's negligent acts
before he came over the overpass were a proximate cause of the collision.

 The inclusion of a sudden emergency instruction does not constitute error when
the evidence conflicts as to whether a driver's actions before the emergency were
suspect. See Oldham, 864 S.W.2d at 127; DeLeon, 933 S.W.2d at 294. Rather, if
there is any support in the evidence for a sudden emergency instruction, the
instruction is properly given. Francis, 803 S.W.2d at 871. We conclude that there
was support in the evidence for the jury's negative finding that Moore's negligence 
prior to the emergency was not a proximate cause of the collision.

 This case is virtually identical in this regard to Knighten, a Texas Supreme
Court case involving a three-party rear-end collision that occurred when it was
raining and the streets were wet. 976 S.W.2d at 674. Knighten, the plaintiff, had to
stop suddenly because the car in front of her stopped without warning, after which a
truck hit her from behind and was hit by a second truck, causing the first truck to
strike her a second time. Id. 

 As here, the issue was whether the defendant's following too closely to
maintain a safe distance was negligence per se. At issue was the standard of care in
article 6701d of the Texas Civil Statutes, which had, by the time of the opinion, been
repealed and codified as section 545.062(a) of the Texas Transportation Code,
entitled "Following Distance." See Knighten, 976 S.W.2d at 675 (quoting former
article 6701d). In language virtually identical to former article 6701d, current section
545.062(a) provides:

 An operator shall, if following another vehicle, maintain an
assured clear distance between the two vehicles so that,
considering the speed of the vehicles, traffic, and the conditions
of the highway, the operator can safely stop without colliding
with the preceding vehicle or veering into another vehicle, object,
or person on or near the highway.


Tex. Transp. Code Ann. § 545.062(a) (Vernon 1999). 

 The supreme court held that "a statute that requires a driver [to] proceed safely
imposes on the driver a duty of reasonable care, thus precluding a negligence per se
instruction." Knighten, 976 S.W.2d at 675. In rejecting Knighten's argument that a
sudden emergency instruction was improper, the supreme court stated, "The trial
court has great latitude and considerable discretion to determine necessary and proper
jury instructions . . . . If an instruction might aid the jury in answering the issues
presented to them, or if there is any support in the evidence for an instruction, the
instruction is proper." Id. at 676.

 Jordan, however, cites Priest, 598 S.W.2d at 363-64 and Deviney, 496 S.W.2d
at 166, as support for her contention that the submitted instruction was improper
because of Moore's negligence prior to the emergency. We find these cases factually
distinguishable. In Priest, the driver who struck the car directly in front of him was
looking back over his shoulder at the time of impact. 598 S.W.2d at 361. In Deviney,
the driver was traveling in the outside lane when he changed lanes to avoid a vehicle
entering from the ramp and hit the car directly in front of him in the lane into which
he had he moved. 496 S.W.2d at 163. 

 In both Priest and Deviney, the evidence established that the drivers failed to
keep a proper lookout, and there was nothing to suggest that their forward view was
in any way obstructed. Here, in contrast, Moore had no visual cues to warn him that
he was about to encounter a line of stopped cars--he was cresting a blind overpass
and saw no brake lights as he did so. Moreover, there is conflicting evidence as to
whether he was driving too fast or following too closely for the traffic conditions
prior to his cresting the hill. See DeLeon, 933 S.W.2d at 294 (concluding sudden
emergency doctrine was inapplicable in cases like Deviney and Priest when
defendant's deemed negligence prior to emergency caused collision, but sudden
emergency instruction was not error when there was fact issue as to defendant's
negligence in failing to maintain safe distance prior to emergency). 

 In sum, we conclude that the record contains evidence from which the jury
could reasonably have inferred that the line of stopped cars on the blind side of the
overpass was sudden and unexpected, that Moore's actions prior to the emergency
were not a proximate cause of the collision, that the emergency, to a reasonable
person, would have required immediate action without time for deliberation, and that
Moore's actions after the emergency condition arose did not differ from those of a
person of ordinary prudence under the same or similar circumstances. 

 We note further that the sudden emergency instruction merely told the jury that
they did not have to place blame on a party to the suit. See Dillard, 157 S.W.3d at
432 ("The purpose of [a sudden emergency instruction] is to advise the jurors, in the
appropriate case, that they do not have to place blame on a party to the suit if the
evidence shows that conditions beyond the party's control caused the accident in
question[.]"); Bed, Bath & Beyond, 211 S.W.3d at 757 ("[S]ometimes accidents are
no one's fault, and an unavoidable accident instruction . . . simply explains to the jury
that they are not required to find someone at fault."). We conclude that the
instruction merely allowed the jury to consider all of the circumstances in answering
whether Moore's negligence proximately caused the occurrence in question.

 Accordingly, we conclude there was evidence of probative value to support
submission of the sudden emergency instruction to the jury. Therefore, the trial court
did not err in submitting the instruction.

 We overrule Jordan's second issue.

Improper Embellishment of Jury Charge


 In her third issue, Jordan contends Moore's counsel improperly embellished
the court's charge, resulting in a unjust verdict. In closing argument, Moore's
counsel said to the jury:

 The other thing that is really important here that applies in this case is
the last instruction that Judge Wise will give you about an emergency. 
It would not be permitted for me to talk about an emergency if it wasn't
proper. The reason it is proper is because the fact situation is exactly
what we are talking about as motorists. This could apply to an accident
or any other type of emergency situation. He is confronted by an
emergency arising suddenly and unexpectedly. That is true. Absolutely,
it is true. He could not see what the traffic conditions were like over the
hill. And it wasn't caused by anything that he did.


Jordan relies on Timberwalk Apartments, Partners v. Cain, 972 S.W.2d 749, 755
(Tex. 1998), to support her argument that a party is not permitted to embellish or
mischaracterize the charge. In Timberwalk, however, counsel flagrantly misstated the
court's instruction, and the appellant timely objected at trial. Id. Here, in contrast,
counsel emphasized the instruction, but did not misstate it, and Jordan did not object
to counsel's closing argument. Thus, she has not preserved error in regard to this
comment. See Tex. R. App. P. 33.1.

 We overrule Jordan's third issue.

Sufficiency of the Evidence


 In her sixth issue, Jordan contends the evidence was legally and factually
insufficient to sustain the jury's answer to question one, "Did the negligence, if any,
of John D. Moore proximately cause the occurrence in question?" to which the jury
answered, "No."

 Standard of Review

 Because Jordan attacks the legal and factual sufficiency of an adverse jury
finding on which she had the burden of proof, she must demonstrate that the evidence
conclusively establishes, as a matter of law, all facts in support of the issue (for
rendition), or, alternatively, that the jury's adverse finding is against the great weight
and preponderance of the evidence (for remand). See Sterner v. Marathon Oil Co.,
767 S.W.2d 686, 690 (Tex. 1989); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986);
Harris County v. Vernagallo, 181 S.W.3d 17, 29 (Tex. App.--Houston [14th Dist.]
2005, pet. denied). In reviewing a claim that the evidence conclusively establishes
liability as a matter of law, we consider evidence and inferences supporting the jury's
finding and ignore all evidence and inferences to the contrary. Havner v. E-Z Mart
Stores, Inc., 825 S.W.2d 456, 458 (Tex. 1992); Sterner, 767 S.W.2d at 690. In
reviewing a claim that the verdict is against the great weight and preponderance of
the evidence, we consider and weigh all of the evidence and may set aside the verdict
only if the finding is so against the great weight and preponderance of the evidence
that it is clearly wrong and unjust. Cain, 709 S.W.2d at 176. The jury may believe
one witness and disbelieve another, and it may resolve inconsistencies in any
testimony. Eberle v. Adams, 73 S.W.3d 322, 327 (Tex. App.--Houston [1st Dist.]
2001, pet. denied).

 Evidence Adduced at Trial

 The evidence and inferences supporting the jury's finding that Moore was not
negligent consisted of (1) Moore's testimony that he had no warning as he crested the
overpass about the line of cars stopped just over the overpass in the exit lane because
he could not see the other side of the hill and saw no brake lights; (2) Jesse McGraw's
testimony confirming these assertions and McGraw's expressed belief that neither
Moore nor Jordan was at fault in the accident and that Moore was driving carefully;
and (3) evidence that Moore was not speeding, and he was traveling at the same speed
as the general traffic before he crested the hill. This evidence is legally sufficient to
sustain the jury's finding.

 Other evidence in the record included (1) the police officer's conclusion that
Moore was following too closely and his citation of Moore for "failure to control
speed"; (2) Moore's admission that it would take at least 100 feet to stop at 40 mph;
and (3) Moore's passing a number of cars before his truck hit Jordan's Expedition. 
Although this Court may have reached a different conclusion based on all of the
evidence, we cannot say that the jury's finding was clearly wrong and unjust. 
Accordingly, we hold that the evidence was factually sufficient to sustain the verdict.

 We overrule Jordan's sixth issue.












Conclusion


 Because we have held that the trial court did not abuse its discretion by
submitting a "sudden emergency" instruction to the jury and that the evidence was
legally and factually sufficient to sustain the jury's finding that Moore was not liable
for the accident, the remainder of Jordan's issues regarding damages and negligent
entrustment are moot, and we decline to address them.

 We affirm the judgment of the trial court.





 Evelyn V. Keyes

 Justice


Panel consists of Chief Justice Radack and Justices Keyes and Alcala.


Chief Justice Radack, concurring.
1. Maethenia Jordan also filed a motion for rehearing en banc that we dismissed as moot. 
See Brookshire Bros., Inc. v. Smith, 176 S.W.3d 30, 40 & n.2 (Tex. App.--Houston
[1st Dist.] 2004, pet. denied) (supp. op. on rehearing).
2. Moore and his front-seat passenger estimated his speed as he came over the top of the
hill to be anywhere from 35 to 50 mph. There is no evidence to show that he was
exceeding the speed limit at the time he crested the overpass.
3. It is not clear from the record on appeal at precisely what time this accident occurred. 
Although Jordan contends in her brief that it was during "rush hour" traffic, she also
testified at trial that it was "somewhere between five and six," and the parties referred
at different times during the trial to the "afternoon" and to the "evening" of the
accident. 
4. The supreme court noted that the "unavoidable accident" doctrine--which applies to
"an event not proximately caused by the negligence of any party to it"--logically
subsumes the sudden emergency doctrine. Reinhart v. Young, 906 S.W.2d 471, 472,
474 (Tex. 1995). It observed, "The [unavoidable accident] instruction is most often
used to inquire about the causal effect of some physical condition or circumstance
such as fog, snow, sleet, wet or slick pavement, or obstruction of view, or to resolve
a case involving a very young child who is legally incapable of negligence." Id. at
472.
5. Several Texas appellate courts have found a "sudden emergency" in situations that
may not have technically come about suddenly, but where defendant became aware
of the condition rather suddenly, but before the defendant's subsequent negligence. 
See, e.g., Lakey v. Cauley, No. 14-98-01221-CV, 2000 WL 33354703, at *4-5 (Tex.
App.--Houston [14th Dist.] June 21, 2001, pet. denied) (not designated for
publication) (emergency arose when defendant parked car on side of road with
headlights pointing in direction from which plaintiff's vehicle was approaching for
at least as long as it took for plaintiff to have seen them); Gonzales v. Castillo, No.
04-99-00063-CV, 2000 WL 84537, at *3 (Tex. App.--San Antonio Jan. 26, 2000, no
pet.) (not designated for publication) (emergency arose when driver applied his brakes
after seeing traffic abruptly slowing and vehicles stopped on rainy, slick road).
6. Unlike the situation in Turnbull v. McIntosh, No. 01-98-01127-CV, 2001 WL 493169,
at *14 (Tex. App.--Houston [1st Dist.] May 10, 2001, pet. denied) (not designated
for publication), there was no evidence in the record of heavy traffic or even of
normal bumper-to-bumper rush hour traffic.